UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JASON LEOPOLD and                   )
RYAN NOAH SHAPIRO,                  )
                                    )
    Plaintiffs,                     )
                                    )
    v.                              )   Civil Action No. 16-cv-1827 (KBJ)
                                    )
DEPARTMENT OF JUSTICE and           )
DEPARTMENT OF HOMELAND SECURITY,    )
                                    )
    Defendants.                     )
_____)

## JOINT STATUS REPORT

In accordance with the Court's March 21, 2017 minute order, counsel for the parties, who have conferred, hereby jointly notify the Court of the status of this matter, and offer separate proposals as to how this matter should proceed:

1. This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. It involves four (partially overlapping) FOIA requests, each seeking investigative records relating to certain comments made in the course of the 2016 Presidential campaign of then-candidate, now-President of the United States Donald J. Trump. Jason Leopold and Ryan Noah Shapiro ("Plaintiffs") made two requests to the Federal Bureau of Investigation ("FBI") (a component of defendant Department of Justice ("DOJ")), and two requests to the United States Secret Service (a component of defendant Department of Homeland Security ("DHS")) (collectively, "Defendants").

2. One of Plaintiffs' requests to the FBI (the "Russia Request") sought "any and all records, including investigative records," referring to the following statements attributed to

then-candidate, now-President Trump on July 27, 2016: "Russia, if you're listening, I hope you're able to find the 30,000 emails that are missing." First Am. Compl. ¶¶ 17, 25, Docket No. 4.

3. Plaintiffs' second request to the FBI (the "Second Amendment Request") sought "any and all records, including investigative records," referring to the following statements attributed to then-candidate, now-President Trump on August 9, 2016: "If she gets to pick her judges, nothing you can do folks," and "Although the Second Amendment people—maybe there is, I don't know." First Am. Compl. ¶¶ 16, 24, Docket No. 4.

4. The FBI responded to both of Plaintiffs' FOIA requests on November 18, 2016, via letter, explaining that the FBI could neither confirm nor deny the existence of any records responsive to Plaintiffs' requests. That is, the FBI issued *Glomar* responses to each request.

5. On March 21, 2017, Defendants filed, with Plaintiffs' consent, a motion to vacate the briefing schedule in this case, as a result of a March 20, 2017 Congressional hearing, in which FBI Director James Comey made the following public statement:

> As you know, our practice is not to confirm the existence of ongoing investigations, especially those investigations that involve classified matters. But, in unusual circumstances, where it is in the public interest, it may be appropriate to do so, as Justice Department Policies recognize. This is one of those circumstances. I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 Presidential Election. And that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts. As with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed. Because it is an open, ongoing investigation, and is classified, I cannot say more about what we are doing and whose conduct we are examining.

*Open Hearing on Investigation of Russian Active Measures Before the H. Permanent Select Comm. on Intelligence*, 115th Cong. (Mar. 20, 2017) (Remarks of FBI Director James B. Comey, Jr. at 00:30:06-00:31:22).[1]

6. That public statement by Director Comey was the first official, authorized disclosure by the FBI that it is "investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts." *Id.*

7. The Court granted Defendants' consent motion to vacate briefing schedule by Minute Order. *See* Mar. 21, 2017 Minute Order.

8. As a result of Director Comey's official disclosure, the FBI has now determined that it will withdraw its *Glomar* response, and conduct a search for documents that are responsive to Plaintiffs' Russia Request. *Cf. Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426-27 (D.C. Cir. 2013) ("[T]he plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect.").

9. Although initial searches began only as recently as the week of March 20, 2017, and definitive information is not yet available, the FBI expects that it possesses at least some records that are responsive to Plaintiffs' Russia Request and subject to FOIA.

10. Because of the existence of an active, ongoing investigation, the FBI anticipates that it will assert Exemption 7(A), on a categorical basis, to withhold all records that are responsive to the Russia Request, because releasing any responsive records (or portions thereof) "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The

---

[1] *Available at* https://www.c-span.org/video/?425087-1/fbi-director-says-hes-investigating-links-trump-campaign-russia (last visited April 6, 2017).

FBI will carry out an appropriate search and review for responsive records to make a definitive determination as soon as possible.

11. As to the Second Amendment Request, the FBI's position is unchanged; it will file a motion for summary judgment in defense of its *Glomar* response.

12. On March 29, 2017, counsel for the parties conferred.

13. The parties agree that summary-judgment briefing will be necessary to resolve all of Plaintiffs' pending claims in this matter.

14. The parties further agree that summary-judgment briefing on all of Plaintiffs' claims (against both the FBI and the Secret Service) should proceed on the same schedule, in the interest of efficiency and judicial economy.

15. As to how that schedule should be structured, the parties disagree—particularly as to whether the schedule in this matter should be bifurcated to accommodate the FBI's intent to invoke Exemption 7(A), on a categorical basis, in response to Plaintiffs' Russia Request. Accordingly, the parties respectfully submit the following alternative proposals:

**THE FBI'S POSITION**

16. Although the search process has only recently begun, based on information already available to agency counsel, the FBI expects that virtually all, if not all, of the documents responsive to the Russia Request will be exempt from disclosure in their entirety under Exemption 7(A), which applies to law-enforcement records the disclosure of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223-24 (1978) (acknowledging that the text of Exemption 7(A) "contemplate[s] that certain generic determinations might be made" to withhold documents on a categorical basis in appropriate cases); *see also id.* at 236 ("We conclude that

Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'"). The categorical application of Exemption 7(A) to these records is thus a threshold issue that the Court will necessarily have to resolve, and that the FBI is confident will dispose of Plaintiffs' claims as to the Russia Request in their entirety.

17. The FBI anticipates that its summary-judgment motion will be granted on this issue. If it is not, however, or if the factual basis for the FBI's invocation of Exemption 7(A) should lapse with the passage of time, the FBI does not wish to forfeit any argument that the records described above are also exempt from release, in whole or in part, for reasons other than Exemption 7(A). Nor does the FBI wish—for its own sake, or for the Court's—to prepare, assert, and brief contested and complex issues regarding exemption claims that are likely to be superfluous.

18. In addition, although the FBI is able to assess relatively quickly whether it believes particular records are exempt in full under Exemption 7(A), the additional time required to perform a full, line-by-line review of such documents and assert other, overlapping exemptions would substantially increase the processing time for responsive records in this case. For example, the FBI expects that a significant subset of any responsive records would be withheld as classified under Exemption 1, but the FBI may only assert Exemption 1 after completing a full classification review of all such information.

19. For these reasons, the FBI strongly believes that it would be in the parties' interests—and the Court's—to allow the FBI to assert Exemption 7(A), as an initial matter, over any responsive records that it believes are subject to withholding in full under that exemption, while preserving the FBI's right to assert at a later date other underlying exemptions over those

documents, should the Court ultimately determine—contrary to the FBI's expectation—that Exemption 7(A) does not apply, or that its categorical invocation was improper in this case.

20. Courts in this district frequently approve such requests—typically, with the consent of the plaintiff. *See, e.g.*, *Manning v. DOJ*, No. 15-cv-1654-APM (Dec. 15, 2015 Minute Order); *Accuracy in Media v. Dep't of Defense*, No. 14-cv-1589-EGS (June 23, 2015 Minute Order); *see also United We Stand America, Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004) (allowing agency to assert and defend additional redactions on remand where agency had reserved the right to so in district court filings). In fact, one of these very plaintiffs, represented by this very counsel, has consented to such a request in at least one recent instance. *See Leopold v. DOJ*, No. 15-cv-2117-RDM (Feb. 9, 2016 Minute Order, granting DOJ's request, with plaintiff Jason Leopold's consent, to bifurcate Exemption 7(A) briefing in FOIA case seeking information relating to records retrieved from electronic equipment obtained from former Secretary of State Hillary Rodham Clinton).

21. Consistent with this well-established and sensible local practice, the FBI respectfully requests an order that would make clear that the FBI may assert, as an initial matter, Exemption 7(A) over any responsive records that are subject to that exemption, without forfeiting its ability to assert at a later date other exemptions over portions of the same documents, if necessary.

22. As to how that would affect the schedule in this matter: FBI anticipates making a categorical assertion of Exemption 7(A) as to the Russia Request and defending its *Glomar* response to the Second Amendment Request at the same time (and in the same brief) as the Secret Service defends its withholdings and moves for summary judgment. If the FBI does not prevail as to its categorical assertion of Exemption 7(A), the FBI would then, after a more fulsome review

of all records responsive to the Russia Request, assert additional exemptions—page-by-page, and line-by-line, to the extent necessary—and the parties would do an additional round of briefing as to those latter withholdings.

23. Defendants expect that the initial round of summary-judgment briefing could begin as early as July 25, 2017. (Setting aside the time required to prepare the briefs and the appropriate declarations, the FBI must first review the relevant investigative file(s) to confirm that categorical withholding under Exemption 7(A) is appropriate, and that there are no documents that can be produced, which is a process that began only recently, following Director Comey's remarks before Congress.)

24. Accordingly, Defendants propose the following schedule for the initial—and, in all likelihood, the only—round of summary-judgment briefing:

- **July 25, 2017**: Defendants' Motion for Summary Judgment

- **August 22, 2017**: Plaintiff's Opposition to Defendant's Motion for Summary Judgment and any Cross-Motion for Summary Judgment

- **September 19, 2017**: Defendants' Reply in Support of Summary Judgment and Opposition to any Cross-Motion for Summary Judgment

- **October 3, 2017**: Plaintiffs' Reply in Support of any Cross-Motion for Summary Judgment

25. If further briefing is necessary as to the Russia Request, the parties can meet and confer and propose an appropriate schedule at a later date.

26. In the event the Court entertains the possibility of requiring the FBI to invoke every potentially applicable exemption at once in its response to the Russia Request, FBI respectfully requests an opportunity to submit full-dress briefing on the issue, or to address it further at a status conference.

## PLAINTIFFS' POSITION

27. It is Plaintiffs' position that the D.C. Circuit's decision in *Maydak v. United States DOJ*, 218 F.3d 760 (D.C. Cir. 2000) requires the FBI to invoke any and all applicable exemptions at the same time. Thus, Plaintiff opposes the piecemeal litigation approach suggested by the FBI.

28. The court in *Maydak* held that the agency had waived its right to assert new exemptions where it had not invoked these other exemptions at the time it invoked Exemption 7(A) in the district court. The FBI seeks to do an end-run around the D.C. Circuit's decision in *Maydak*. The FBI's proposal essentially asks the Court for permission to prospectively violate the *Maydak* waiver rule with impunity in order for it to gain a tactical advantage in litigation. ("Nor does the FBI wish . . . to prepare, assert, and brief contested and complex issues[.]")

29. While "[t]he FBI anticipates that its summary-judgment motion will be granted," Plaintiffs anticipate that the FBI's summary judgment motion will be denied because the FBI's categorical assertion of Exemption 7(A) is not legally justified. Briefing all exemptions simultaneously will therefore not be superfluous. In any event, if the Court requires briefing on all exemptions simultaneously, but finds that the FBI has properly invoked Exemption 7(A), the Court can conclude its inquiry without expending any resources on the remaining exemptions.

30. At times, plaintiffs find it to be to their advantage to consent to the type of bifurcated schedule proposed here. Plaintiffs may, for example, wish to commence briefing the Exemption 7(A) issue immediately, without waiting for the FBI to complete its review of all of the records to determine if other exemptions apply. In this case, Plaintiffs have decided they are willing to accept the delay in commencing briefing in exchange for the benefit of promoting the full, final, and expeditious resolution of the entire case, and avoiding piecemeal litigation.

31.     The FBI contends that "the additional time required to perform a full, line-by-line review of such documents and assert other, overlapping exemptions would substantially increase the processing time," but it cannot substantiate this statement at this time because it does not yet know the total volume of responsive records. The amount of any additional time or burden will vary with the number of documents involved.

32.     The FBI requests formal briefing on the bifurcation issue, or alternatively an opportunity to address the issue at a status conference. Plaintiffs do not object to discussing the issue at a status conference, but do object to the FBI's proposal to brief the timing of a briefing schedule, as doing so will unnecessarily delay resolution of the case.

*     *     *

| | |
|---|---|
| DATE:  April 6, 2017 | Respectfully submitted, |
| | |
| | CHAD A. READLER |
| | Acting Assistant Attorney General |
| | |
| | MARCIA BERMAN |
| | Assistant Branch Director |
| | Federal Programs Branch |
| | |
| /s/ *Jeffrey Light* | /s/ *Stephen M. Pezzi* |
| Jeffrey L. Light | STEPHEN M. PEZZI (D.C. Bar 995500) |
| D.C. Bar #485360 | Trial Attorney |
| 1712 Eye St., NW | United States Department of Justice |
| Suite 915 | Civil Division, Federal Programs Branch |
| Washington, DC 20006 | 20 Massachusetts Avenue NW |
| (202)277-6213 | Washington, DC 20530 |
| Jeffrey@LawOfficeOfJeffreyLight.com | Phone (202) 305-8576; Fax (202) 616-8470 |
| | Email: stephen.pezzi@usdoj.gov |
| | |
| *Counsel for Plaintiffs* | *Counsel for Defendants* |