**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD, <br> RYAN NOAH SHAPIRO <br><br>         Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE <br><br>         Defendant. | Civil Action No. 16-cv-01827 |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)　　(U)　I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia.　I have held this position since August 1, 2002.　Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.　In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy.　From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.　I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

1

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

(2)      (U)   In my official capacity as Section Chief of RIDS, I supervise approximately 247 employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.   My responsibilities also include the review of FBI information for classification purposes as mandated by E.O. 13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of Exemption 1 claims under the FOIA.   I have been designated by the Attorney General of the United States as an original classification authority, and a declassification authority pursuant to E.O. 13526 §§ 1.3 and 3.1.   The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)      (U)   Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiffs' two FOIA requests to the FBI seeking records concerning comments made by Donald J. Trump, then the Republican nominee for President, during two separate campaign speeches from summer of 2016.

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

(4)      (U)   This declaration is being submitted in support of Defendants' motion for summary judgment in the above-captioned matter.

## BACKGROUND

(5)      (U)   By email dated August 18, 2016, Plaintiffs submitted two FOIA requests to the FBI seeking records concerning the following subjects:

> Any and all records, including investigative records, mentioning or referring to Donald J. Trump's statements on 9 August 2016, "If she gets to pick her judges, nothing you can do, folks," and "although the Second Amendment people – maybe there is, I don't know."

and

> Any and all records, including investigative records, mentioning or referring to Donald J. Trump's statement on 27 July 2016, "Russia, if you're listening, I hope you're able to find the 30,000 emails that are missing," and "I think you will probably be rewarded mightily by our press."

(*See* **Exhibit A**).   Hereafter, I have referred to these requests as the "Second Amendment Request" and the "Russia Request," respectively.

(6)      (U)   On September 12, 2016, Plaintiffs filed the complaint in the instant action. *See* **ECF No. 1, Complaint.**

(7)      (U)   By letter dated November 18, 2016, the FBI responded to Plaintiffs' Second Amendment Request, identified by the FBI as FOIPA Request Number 1358393.   The FBI issued a *Glomar* response,[1] declining to confirm or deny the existence of any records responsive

---

[1] (U)   The so-called *Glomar* response originated from the *Phillipi v. CIA,* 655 F 2d. 1325, 1327 (D.C. Cir. 1981) case, in which a FOIA requester sought information concerning a ship named the "Hughes Glomar Explorer." The CIA refused to confirm or deny its relationship with the "Glomar" vessel because to do so would compromise

3

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

to Plaintiffs' request and citing as its bases FOIA Exemptions (b)(7)(A) and (b)(7)(E).   The

letter informed Plaintiffs of their right to appeal the FBI's determination by filing an

administrative appeal with the Department of Justice ("DOJ"), Office of Information Policy

("OIP") within sixty days.   (***See* Exhibit B**)

(8)   (U)   By letter dated November 18, 2016, the FBI responded to Plaintiffs' Russia

Request, identified by the FBI as FOIPA Request Number 11358395.   The FBI issued a *Glomar*

response, declining to confirm or deny the existence of any records responsive to Plaintiffs'

request and citing as its bases FOIA Exemptions (b)(7)(A) and (b)(7)(E).   The letter further

informed Plaintiffs of their right to appeal the FBI's determination by filing an administrative

appeal with the Department of Justice ("DOJ"), Office of Information Policy ("OIP") within

sixty days.   (***See* Exhibit C**).   It is my understanding that, in a later meet-and-confer call,

counsel for Defendants informed counsel for Plaintiffs that the FBI also intended to rely on

Exemption 1 and Exemption 3 as independent bases for the FBI's *Glomar* response to the Russia

Request.

(9)   (U)   On March 20, 2017, during testimony before the House Permanent Select

Committee on Intelligence ("HPSCI"), former FBI Director James B. Comey made the following

statement:

> I have been authorized by the Department of Justice to confirm
> that the FBI, as part of our counterintelligence mission, is
> investigating the Russian government's efforts to interfere in the
> 2016 presidential election and that includes investigating the
> nature of any links between individuals associated with the Trump

national security or would divulge intelligence sources and methods.

4

**UNObtAINED//~~LAW ENFORCEMENT SENSITIVE~~**

> campaign and the Russian government and whether there was any
> coordination between the campaign and Russia's efforts. As with
> any counterintelligence investigation, this will also include an
> assessment of whether any crimes were committed.

*See* Transcript of the House Permanent Select Committee on Intelligence

Hearing on Russian Interference in the 2016 U.S. Election, March 20, 2017,

https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-

transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-

election/?utm_term=.b9f19a0cf9cf (last accessed 6/12/2017).

(10)    (U)   Director Comey further explained that "[b]ecause it is an open ongoing

investigation and is classified, I cannot say more about what we are doing and whose conduct we

are examining."   *Id.*

(11)    (U)   Interpreting Plaintiffs' Russia Request to be seeking records from the

investigation Director Comey acknowledged on March 20, 2017 (hereinafter "the Russia

investigation"), the FBI rescinded its *Glomar* response, and is now relying on FOIA Exemption

(b)(7)(A) to withhold in full all records responsive to the Russia Request.[2]

### THE FBI's *GLOMAR* RESPONSE TO
### THE SECOND AMENDMENT REQUEST

(12)    (U)   The FBI relies on a *Glomar* response in instances where, assuming that

responsive records existed, even acknowledging their existence would result in harm protected

against by one or more FOIA exemptions.   To be credible and effective, the FBI must use the

---

[2] (U)   Other exemptions apply to the records responsive to the Russia Request.   However, the Court has authorized the FBI to brief only Exemption (b)(7)(A) at this time, while preserving any other exemptions that may apply to the responsive records.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

*Glomar* response in all similar cases regardless of whether responsive records exist, including instances in which the FBI does not possess any records responsive to a particular request. If the FBI were to invoke a *Glomar* response only when it actually possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist.

(13)   (U)   As noted above, the FBI issued a *Glomar* response to Plaintiffs' Second Amendment Request, refusing to confirm or deny the existence of any responsive records. The FBI determined that merely acknowledging the existence or non-existence of records responsive to Plaintiffs' requests could trigger harm under two FOIA exemptions. First, given the timing of the statement in relation to Plaintiffs' FOIA request, acknowledging whether or not the FBI maintains an investigative file on this matter could reasonably be expected to interfere with law enforcement proceedings, should any exist. *See* 5 U.S.C. § 552(b)(7)(A). Second, confirming whether the FBI maintains investigative records concerning the subject of Plaintiffs' request could reasonably be expected to risk circumvention of the law. *See* 5 U.S.C. § 552(b)(7)(E).

## EXEMPTION (b)(7) THRESHOLD

(14)   (U)   Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.

(15)   (U)   Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

DOM"), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States.

(16)    (U)   Plaintiffs' Second Amendment Request seeks investigative records concerning statements made by then-candidate, now-President of the United States Donald J. Trump during a campaign speech following his nomination for President by the Republican Party.   Assuming the existence of the records requested by Plaintiffs, such records would relate to criminal laws falling within the FBI's law enforcement mission to investigate, including, among other things, threats against a Presidential nominee.   Accordingly, the records that Plaintiffs have requested, if they exist, would meet the threshold requirement of FOIA Exemption (b)(7).

## EXEMPTION (b)(7)(A)

(17)    (U)   FOIA Exemption 7(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings."   5 U.S.C. § 552(b)(7)(A).

(18)    (U)   In addition to satisfying Exemption (b)(7)'s threshold, an agency must establish that (a) there is a pending or prospective law enforcement proceeding and (b) disclosure of responsive records could reasonably be expected to adversely affect it.

7

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

(19)   (U)   Given the timing of Plaintiffs' Second Amendment Request and the

comments that are the subject of that request, any responsive records, if they exist, would likely

be part of a pending criminal investigation not publicly acknowledged by the FBI.[3]   Therefore,

responding with anything other than a *Glomar* response would be tantamount to acknowledging

the existence or nonexistence of such a pending investigation, which has never been publicly

confirmed or denied.   If the FBI had such a pending investigation, acknowledging its existence

prematurely could reasonably be expected to hamper and interfere with it.   Specifically, it would

tip off subjects and persons of investigative interest, thus giving them the opportunity to take

defensive actions to conceal their criminal activities, elude detection, and suppress and/or

fabricate evidence.   It would also expose any potential witnesses or sources to harassment,

intimidation, or coercion.   Thus, assuming that the FBI has a pending investigation,

acknowledging such an investigation could reasonably be expected to severely hamper the FBI's

ability to ascertain the truth and, assuming there was a violation of the law, to successfully

prosecute the matter.   Conversely, assuming that the FBI does not have any pending

investigation on this subject, the FBI's *Glomar* response is nevertheless required, because if the

FBI were to invoke a *Glomar* response only when it actually possessed responsive records, the

---

[3] To be clear, the FBI interpreted the Second Amendment Request as seeking only investigative records regarding the comments in question by President Trump.   A broader interpretation (which might include, for example, an email sent to a staffer in an FBI field office with an automated news alert regarding press coverage of the comments, or other similar records) would have resulted in the FBI denying the request as overly vague, overly broad, and unduly burdensome, as the FBI would have been unable to conduct an adequate search for such records. *See, e.g.*, *Anderson v. U.S. Dep't of State*, 661 F. Supp. 2d 6, 12 (D.D.C. 2009) ("Generally, an agency need not honor a FOIA request that requires it to conduct an unduly burdensome search.").

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

*Glomar* response would be interpreted as an admission that responsive records exist, thus rendering it ineffective.

(20)   (U)   Therefore, the FBI neither confirms nor denies the existence or nonexistence of records responsive the Second Amendment Request pursuant to FOIA Exemption (b)(7)(A).

## EXEMPTION (b)(7)(E)

(21)   (U)   FOIA Exemption (b)(7)(E) protects "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552 (b)(7)(E).

(22)   (U)   This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

(23)   (U)   Whether an allegation or potential threat rises to the level or satisfies FBI criteria for initiating an investigation is a law enforcement technique or procedure that the FBI protects pursuant to Exemption (b)(7)(E).   Similarly, how the FBI applies its investigative resources (or not) against a particular allegation, report of criminal activity, or perceived threat is also a law enforcement technique or procedure that the FBI protects pursuant to Exemption (b)(7)(E).

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

(24)    (U)   As previously demonstrated, acknowledging the existence or non-existence of the law enforcement records Plaintiffs seek in the Second Amendment Request would be tantamount to confirming the existence or non-existence of an FBI investigation into particular comments made by a Presidential nominee.   Such an acknowledgment would expose information about the types of statements, actions, allegations, or threats the FBI deems appropriate to commit (or not commit) investigative resources toward.   Such information would provide significant insight into the activities likely to attract (or not attract) the FBI's law enforcement attention.   Armed with such knowledge, individuals would be able alter their behavior to avoid attention by law enforcement, making it more difficult for the FBI to be proactive in assessing threats and investigating crimes.   Therefore, the FBI neither confirms nor denies the existence of records pursuant to FOIA Exemption (b)(7)(E).

## EXEMPTION (b)(7)(A) RESPONSE TO THE RUSSIA REQUEST

### BACKGROUND ABOUT THE RUSSIA INVESTIGATION

(25)    (U)   As explained above, on March 20, 2017, former FBI Director Comey testified during a HPSCI hearing that the FBI is conducting a counterintelligence investigation into the Russian government's efforts to interfere in the 2016 presidential election, including the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts. Former Director Comey further stated that the investigation would include an assessment of whether any crimes were committed.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

(26)   (U)   On May 9, 2017, President Trump terminated and removed Director Comey,

effective immediately.   On May 17, 2017, Deputy Attorney General Rod Rosenstein appointed

former FBI Director Robert Mueller to serve as special counsel to oversee the Russia

investigation.   *See* DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate

Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017).

This appointment authorizes Special Counsel Mueller to "conduct the investigation confirmed by

then-FBI Director James B. Comey in testimony before the House Permanent Select Committee

on Intelligence on March 20, 2017, including:   (i) any links and/or coordination between the

Russian government and individuals associated with the campaign of President Donald Trump;

and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other

matters within the scope of 28 C.F.R. § 600.4(a)."   *Id.*   In addition, "[i]f the Special Counsel

believes it necessary and appropriate, the Special Counsel is authorized to prosecute federal

crimes arising from the investigation of these matters."   *Id.*

(27)   (U)   The Russia investigation remains ongoing.   However, other than disclosing

the investigation's existence and a general acknowledgment by then-Director Comey of interest

in certain actions by former National Security Advisor Michael Flynn,[4]   neither the FBI, Special

---

[4] (U)   During testimony before the Senate Judiciary Committee on May 3, 2017, the following interaction occurred between Senator Whitehouse and Director Comey:

WHITEHOUSE:

It has been disclosed and publicly reported that there was a two day interval, between the FBI interview of Michael Flynn related to his conversations with Ambassador Kislyak and then deputy attorney general's report to White House Counsel about those calls.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

Counsel Mueller, nor any representative of the Department of Justice has publicly or officially

acknowledged any other details about the investigation, including, for example, its subjects,

scope, or focus.

## SEARCH FOR RESPONSIVE RECORDS

(28)     (U)   As a result of former Director Comey's March 20, 2017 acknowledgment of

the existence of the Russia investigation, the FBI rescinded its *Glomar* response to Plaintiffs'

Russia Request, and immediately began a search for responsive records.[5]

(29)     (U)     Because of the vague nature of Plaintiffs' request, the FBI interpreted it to

be seeking all records from the relevant investigative files (which are now part of Special

Counsel Mueller's Russia investigation).   Therefore, the paragraphs below describe the nature

of those investigative files and proceed on the assumption that the universe of responsive records

---

Did you participate in conversations related to this matter during that two day interval and what can you tell us about why that interval took two days, was there some standard operating procedure that needed to be vindicated? Was there -- you'd think that that could've flipped over to a conversation to the White House a good deal quicker than that once the agent's report came back from the interview.

COMEY:

Yes, I don't -- I don't know whether two days is right. I think it might have been a day. I could be wrong. It could have been two days. And I did participate in conversations about that matter, and I think I'll stop there because I don't ...

*See* Transcript of the House Permanent Select Committee on Intelligence Hearing on Russian Interference in the 2016 U.S. Election, March 20, 2017, https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-election/?utm_term=.b9f19a0cf9cf (last accessed 6/12/2017).

[5] Accordingly, as is typical, the FBI used March 20, 2017 as the cut-off date for the search.   In addition, as with the Second Amendment Request, for reasons explained above, the FBI interpreted the Russia Request to be seeking only investigative records.   *See supra*, ¶ 19 n.3.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

is co-extensive with the contents of the investigative files as they existed on March 20, 2017, the cut-off date for the FBI's search for responsive records.   Setting aside the vague nature of Plaintiffs' request, adopting a narrower interpretation of Plaintiffs' request—for example, as seeking only documents that explicitly mentioned or referred to the relevant comments by President Trump that are the subject of the Russia request—would have prevented the FBI from responding to the request with virtually any information on the public docket, as doing so would itself have necessarily revealed information that is exempt under FOIA's Exemption 7(A).   That is because such a response would tend to reveal, for example, information about the scope or focus of the investigation, the extent to and manner in which those particular comments by President Trump fit within (or were deemed irrelevant to) the larger investigation as a whole (if at all), the relative significance of those comments (or lack thereof) to the investigation, and so on.   Accordingly, this declaration proceeds on the above-explained assumption about the universe of responsive records, and explains why all such responsive records must be withheld, on a categorical basis, under Exemption 7(A).

(30)   (U)   In most instances when searching for records to respond to a FOIA request, RIDS's first step is to conduct a search of the FBI's Central Records System ("CRS").   Such a search was not necessary in this case because the responsive records were located by other means.   Due to the high profile and sensitive nature of the subject of Plaintiffs' request, counsel in the National Security and Cyber Law Branch ("NSCLB") of the FBI's Office of the General Counsel ("OGC") – subject-matter experts who were already familiar with the relevant records – were consulted to identify and locate any and all records responsive to the Russia Request.

13

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

NSCLB is the office within the OGC that provides legal support and advice on counterintelligence investigations.   Through NSCLB counsel who were assigned to provide such support, the records responsive to Plaintiffs' request were identified and located, based on NSCLB counsel's pre-existing familiarity with the investigation and records compiled during it. Specifically, NSCLB counsel identified and located the relevant investigative files, which contain records responsive to the Russia Request.   NSCLB counsel then assisted in facilitating the FBI's review of the responsive records that existed in those files as of the search cut-off date – March 20, 2017 – for purposes of responding to this FOIA request.

(31)     (U)   That manual search and review of the entirety of the relevant investigative files confirmed that all records responsive to Plaintiffs' request are part of an active, ongoing counterintelligence investigation being conducted by the FBI, which is now being overseen by Special Counsel Mueller.   Accordingly, the FBI has determined that all responsive records are exempt from disclosure pursuant to FOIA Exemption (b)(7)(A).[6]

### EXEMPTION (b)(7)(A) – PENDING ENFORCEMENT PROCEEDINGS

(32)     (U)   As previously explained, the first step in asserting Exemption (b)(7)(A) is to establish that the responsive records were compiled for law enforcement purposes.   Here, the records responsive to Plaintiffs' request are part of an active, ongoing counterintelligence

---

[6]   (U)   Many (even most) of the responsive records are also exempt, in whole or in part, under one or more additional FOIA exemptions.   As previously noted, the Court is permitting the FBI to brief only Exemption (b)(7)(A) at this time and to preserve its ability to assert other exemptions if necessary.   Moreover, the responsive records in this case include records or information containing equities of other government agencies ("OGAs"). Because the FBI is withholding all records pursuant to Exemption (b)(7)(A), it has not sent these records to the OGAs for review and application of other exemptions as necessary to protect their equities.   If the FBI's Exemption 7(A) withholdings are not upheld, it will refer the records to/consult with the OGAs about their disposition.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

investigation into the Russian Government's efforts to interfere in the 2016 Presidential Election,

including the nature of any links and/or coordination between individuals associated with the

Trump campaign and the Russian Government.   The investigation is clearly within the law

enforcement duties of the FBI to detect and undertake counterintelligence and national security

investigations, and to investigate possible violations of federal criminal laws.   *See, e.g.,* 28

U.S.C. § 533.   Thus, all of the records responsive to Plaintiffs' Russia Request were compiled

for law enforcement purposes and readily meet the threshold for applying FOIA Exemption

(b)(7)(A).

    (33)   (U)   Next, to apply Exemption (b)(7)(A), the FBI must establish the existence of

a pending or prospective investigation or other enforcement proceeding.   As previously

described, the FBI is conducting and Special Counsel Mueller is overseeing a counterintelligence

investigation concerning Russian interference in the 2016 presidential election.   That

investigation is actively pending, as of the date of this filing.   Thus, this element is also readily

established.

    (34)   (U)   Finally, the FBI must establish that disclosure of responsive records could

reasonably be expected to interfere with the pending enforcement proceeding.   The FBI has

determined that disclosure of any responsive records in the midst of this sensitive, on-going

investigation is reasonably expected to interfere with the investigation as well as any potential

criminal prosecutions or enforcement proceedings that may ultimately result from the

investigation.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

(35)   (U)   Providing a document-by-document *Vaughn* index or description of the records responsive to Plaintiffs' request would undermine the very interests that the FBI seeks to protect under Exemption (b)(7)(A).   Specifically, identifying the precise number of particular types of records and describing their contents would reveal non-public information about the targets and scope of the investigation, where the FBI is focusing or has focused its resources at any given period of time, and what investigative techniques and procedures are being or have been deployed.   As further elucidated below, premature disclosure of such information in the context of this active and sensitive investigation could reasonably be expected to adversely affect it.   Similarly, disclosing the total volume of responsive information protected by Exemption (b)(7)(A) would reveal information about the nature, scope, focus, and conduct of the investigation, and thus cannot be publicly disclosed without undermining the law enforcement interests the FBI is seeking to protect by application of Exemption (b)(7)(A) in this case.

(36)   (U)   In order to protect the significant law enforcement interests here, and consistent with procedures explicitly endorsed by the U.S. District Court for the District of Columbia and the Circuit Court for the District of Columbia Circuit, the FBI instead has described the types of records in the investigative files that hold all records responsive to Plaintiffs' Russia Request, all of which are being withheld in full pursuant to Exemption (b)(7)(A).   The FBI has assigned each type of record in those investigative files to a functional category, and has then explained how disclosure of records from that functional category is reasonably expected to interfere with the FBI's pending investigation and any resulting prosecutions/enforcement proceedings.   In conducting this analysis, the FBI reviewed the

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

responsive records in order to categorize them properly, assigned them to the appropriate functional categories, and determined that no non-exempt information exists that can be segregated and released without adversely affecting the FBI's pending investigation and any prospective prosecutions/enforcement proceedings, other than the information that is in the public version of this declaration.

(37)    (U)    The FBI is also filing, *ex parte* and *in camera*, a fully unredacted version of this declaration that includes certain information about certain types of documents, which is itself protected by Exemption 7(A).   Because the release of that law-enforcement-sensitive information would itself interfere with the investigation for the reasons explained below, it is being filed only in redacted form on the versions of these filings that will appear on the public docket.

**A.    *Types of Responsive Records***

(38)    (U)   Every responsive record in the relevant investigative files consists of one of the types of records detailed in the table below:

| (U) RECORD | (U) DESCRIPTION |
|---|---|
| (U) FD-1057 (Electronic Communications ("ECs")) | (U) ECs are the primary vehicle of correspondence within the FBI. The purpose of an EC is to communicate within the FBI in a consistent format that can be uploaded by the originating Division or office, transmitted, and downloaded by recipient Divisions or offices within the FBI's internal computer network. They are generally used when no action is necessary and when the recorded information is non-testimonial.   These forms are often utilized to record and disseminate intelligence/investigative information and for general investigation administration purposes. |

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

| (U) RECORD | (U) DESCRIPTION |
|---|---|
| (U) FBI Letters | (U) Formal correspondence in a format used by the FBI to communicate with the Department of Justice ("DOJ"), U.S. Attorneys' Offices, OGAs, other law enforcement agencies (including federal, state, local, and tribal), commercial businesses, and private citizens. Its format is identical to the business letters utilized by commercial agencies except that it contains the FBI Seal at the top of the first page, as well as specific identifying information regarding the originating office within the FBI that sent the letter (*e.g.*, San Diego Division or FBIHQ). |
| (U) FD-302 | (U) This form is used to record the results of FBI interviews, as well as interactions between FBI personnel and others during an investigation (such as telephone calls or in-person interactions that are not interviews). Information obtained through an interview may later be used as evidence in a criminal trial. These interview forms are often incorporated into FBI Investigative Reports. The contents of these forms may also be incorporated into ECs for purposes of setting/covering investigative leads. |
| (U) FD-340 (1A Envelope) | (U) This is an envelope used to hold materials other than formal FBI-created documents (such as ECs, letters, or 302s) in a case. The 1A envelopes can house items like DVD recordings, original notes taken by special agents during an interview (which are later relied on to create FD-302s), and any other materials such as photographs, receipts, tickets, etc. |
| (U//LES) ▮▮▮▮▮▮▮▮ | (U//LES) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| (U) FD-542 (Investigative Accomplishment Form) | (U) This is an internal FBI form that employees use to claim investigative accomplishments, such as the use of particular investigative methods, in investigations. |
| (U) FD-941 (Consent to Search Computers) | (U) This form documents consent provided by individuals/entities/organizations for the FBI to search their computers. |
| (U) FD-999 | (U) These forms are used to request assistance from a local, state, federal, tribal, or foreign law enforcement agency; to record dissemination of information to such other agencies; and to report significant liaison with such an agency. |
| (U//LES) ▮▮▮▮▮▮▮▮ | (U//LES) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

| (U) RECORD | (U) DESCRIPTION |
|---|---|
| (U) FD-1036 (Import Form) | (U) This form is used to describe documents and materials imported into the electronic investigation files in the Sentinel system. |
| (U//LES) ███████ | (U//LES) ███████ |
| (U//LES) ███████ | (U//LES) ███████ |
| (U//LES) ███████ | (U//LES) ███████ |
| (U) FD-1087 (Evidence Form) | (U) This administrative form is used to describe, document, and track each type/item of evidence gathered or obtained by the FBI during an investigation. |

## B.    *Functional Categories*

(39)    (U)    After locating and reviewing the relevant investigative files, and identifying each of the "types" of responsive records described above, the FBI reviewed and categorized the records into the following functional categories: (1) records reflecting and discussing investigative methods or procedures being utilized by the FBI ("Investigative Records or Information"); (2) records reflecting, summarizing, or analyzing evidence obtained by the FBI or evidence to be obtained by the FBI ("Evidentiary Records or Information"); and (3) records reflecting various administrative types of information ("Administrative Records or Information").    Each responsive record in this case, and the information contained in each

19

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

record, falls into one or more of these categories.   For example, a single record – *e.g.*, an EC –

may serve multiple purposes, such as documenting the use of a particular investigative technique

and the information gathered through it, as well as administrative directions.   Therefore, the EC

itself could be included in all three categories, as could particular pieces of information

contained in the document.

(40)   (U)   The following paragraphs describe the harm that is likely to result from

releasing (or even disclosing any further information about) the responsive records that fall

within each functional category.

**C.   *Reasonable Expectation of Harm from Disclosing Investigative Information***

(41)   (U)   This category includes records of law enforcement methods or procedures

undertaken in furtherance of the investigation, to include requests for authority to engage in

various investigatory activities or employ particular methods or procedures; the results of such

activities, methods, or procedures; and the collection, analysis, and dissemination of information

obtained through utilization of these activities, methods, or procedures.

(42)   (U//LES)   ███████████████████████████:   The records protected

in this functional category include ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████   could reasonably be expected to interfere with it, which is why this

information must be filed only *ex parte* and *in camera*.   Moreover, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████   Accordingly, the release of ████████████████████████

██████████████████████████████ would significantly disrupt and harm the pending

investigation and any prospective prosecutions/enforcement proceedings.

(43)    (U)    <u>Exchange of Information Between FBI and Other Law Enforcement</u>

<u>Agencies/OGAs</u>:    Release of information exchanged between the FBI and its partners would

disclose evidence, investigative information, law enforcement methods and procedures being

utilized in this investigation, and criminal intelligence developed by the FBI and OGAs/other law

enforcement agencies that have cooperated with and provided information to the FBI, and that

21

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

are still doing so, in the pending investigation.   Inherent in this cooperative effort is the mutual understanding that information provided to the FBI by these agencies will not be prematurely released.   This information was gathered, and is continuing to be gathered, to help identify subjects, suspects, and/or other individuals of potential investigative interest; to identify and assist in locating witnesses and/or confidential sources; and to further the progress of the investigations.   Release of this information at this point in the investigative process would reveal the scope and focus of the investigation; identify and tip off individuals of the FBI's interest in them; and provide suspects or targets the opportunity to destroy evidence and alter their behavior to avoid detection.

**D.**     ***Reasonable Expectation of Harm from Disclosing Evidentiary Information***

(44)     (U)   This category includes copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence.   A derivative communication describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation.   Other derivative communications report this information to other FBI field offices, other law enforcement agencies, or OGAs, either to advise them about the progress of the investigation or to elicit their assistance in handling investigative leads.

(45)     (U)   <u>Information Concerning or Reflecting Documentary Evidence</u>:     The responsive records include information about documentary evidence being gathered in the investigation; they discuss, describe, or analyze the documentary evidence; and they reflect the investigatory methods and procedures used to obtain the evidence.   Disclosure of such

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

information at this time would undermine the pending investigation and any pending or

prospective prosecutions/enforcement proceedings by prematurely revealing:    the scope and

focus of the investigation; who the FBI is investigating, why, and for what specific activities; the

identities of witnesses and cooperators; and the participation and cooperation of OGAs/other law

enforcement agencies in the investigation.    Disclosure of such information would arm subjects,

persons of interest, and any individuals intent on obstructing the investigation with the

information necessary to take defensive actions to conceal their activities; elude detection and

surveillance; suppress, destroy, or fabricate evidence; and/or interfere or attempt to interfere with

or intimidate witnesses, sources, and cooperators.[7]

(46)    (U//LES) ███████████████ : ██████████████

███████████████████████████ could

prematurely reveal information about evidence that the FBI has obtained or is seeking in its

investigation, ████████████████████

██████████████████████

██████████████████████

██████████████████████

███████████████ which could reasonably be expected to impede the

investigation.    Again, because █████████████████

████████████ would reasonably be expected to interfere with the investigation, this

_____

[7]  (U)   In addition, disclosure of many of these records, and the information contained in them, would also cause the harms outlined with regard to the functional category of "Investigative Information."

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

paragraph must be withheld from the requesters (and the public) under Exemption (b)(7)(A), and is therefore redacted on the public version of this filing.

(47)   (U)   Exchange of Information Between FBI and Other Law Enforcement Agencies/OGAs:   As explained above, release of information exchanged between the FBI and its partners would not only reveal investigative information and law enforcement methods and procedures being used in the FBI's investigation, it would also reveal evidence and criminal intelligence developed by the FBI and OGAs/other law enforcement agencies that have cooperated with and provided information to the FBI, and that are still doing so, in the pending investigation.   Such information would reveal the focus, scope, and targets of the FBI's investigation, which could also reasonably be expected to impede the investigation.

**E.**   ***Reasonable Expectation of Harm from Disclosure of Administrative Information***

(48)   (U)   While the other functional categories concern mostly extant records, this functional category includes administrative information contained in other records, such as case captions, serial numbers, identities of FBI field offices, dates of investigations, and administrative instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines.[8]   The following subparagraphs describe the types of administrative information contained in records responsive to Plaintiffs' request and the harms that could reasonably be expected to result from the disclosure of such materials here.

_____

[8]   (U)   Administrative information is often contained at the beginning or end of correspondence or documents that also fall within the Investigative or Evidentiary Information categories, such that release of the administrative information would also reveal the investigative interests of the FBI and could enable suspects, targets, and individuals of interest to the FBI to discern a "road map" of the investigations.   Accordingly, these functional categories are not entirely homogenous.

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

(49)    (U)    <u>Administrative Instructions and Information About Investigative Activities</u>.

Responsive records in this case include administrative instructions and information about

investigative activities that have been conducted or are contemplated, in order to monitor the

progress of the investigation and facilitate its conduct.    Such administrative instructions and

information have the potential to reveal or confirm:    the use or contemplated use of particular

law enforcement techniques and procedures, the effectiveness of those techniques and

procedures; and guidelines or instructions for their use; the cooperation of OGAs/law

enforcement agencies in the investigation; the identities of sources, witnesses, targets, and other

individuals of potential investigative interest; the focus, scope, and anticipated trajectory of the

investigation; any potential or perceived challenges in the investigation; and requests for specific

investigative inquiries and affirmative taskings to various FBI field offices or to other

government or law enforcement agencies (*i.e.*, investigative leads).

(50)    (U)    Disclosure of this information would provide a road map of the FBI's

investigation – what has already occurred and what is being planned.    Such disclosure has the

potential of exposing actual and anticipated witnesses and sources, and arming adversaries with

information necessary to avoid particular techniques and procedures, develop countermeasures,

and destroy or fabricate evidence.    Accordingly, disclosure of administrative instructions and

information about investigative activities is reasonably expected to adversely affect the FBI's

investigation and other prospective prosecutions/enforcement proceedings.

(51)    (U)    <u>Other Administrative Materials</u>.    The FBI has also determined that

disclosure of administrative materials such as storage envelopes, transmittal forms, and

standardized forms used for a variety of particular purposes could reasonably be expected to adversely affect its investigation.   These types of materials are used throughout investigations for many routine purposes in administratively documenting the investigative files as the investigation progresses.   However, the manner in which they have been used and organized in the files in and of itself reveals information of investigative value.   For example, a 1A envelope may be used to store records obtained from a witness.   While the generic envelope is not specific to this investigation, handwritten notations on the envelope identify dates, places, and the identities of the sources providing the information.   In addition, the mere fact that an FBI Special Agent used an envelope for the storage of records he/she has obtained from a source is revealing on its own.   Thus, disclosure of these types of administrative materials could harm the investigation by providing details that, when viewed in conjunction with knowledge possessed by subjects or others knowledgeable about matters being investigated, would provide information useful in identifying witnesses and ascertaining investigative strategies and items of evidence.

## SEGREGATION

(52)   (U)   The responsive records in this case were reviewed to determine whether any existed that could be segregated and released to Plaintiffs.   However, given the active and fluid nature of the investigation, the sensitivities of the materials, and the reasonable expectation of harm from premature disclosure of investigative materials here, the FBI has concluded that no non-exempt information exists that can be reasonably segregated and released to Plaintiffs.   To

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

provide any further details about this determination risks the very harms that the FBI is trying to avoid by relying on Exemption (b)(7)(A).

## CONCLUSION

(53)    (U)   The FBI neither confirms nor denies the existence of records responsive to Plaintiffs' Second Amendment Request.   Acknowledging whether such investigative records exist could prematurely reveal the existence a never-before-acknowledged pending investigation, which in turn could reasonably be expected to interfere with it, and would disclose law enforcement techniques or procedures that could reasonably be expected to risk circumvention of the law.   Therefore, the FBI's *Glomar* response asserting Exemptions (b)(7)(A) and (b)(7)(E) is an appropriate response to Plaintiffs' Second Amendment Request.

(54)    (U)   The FBI has also withheld, on a categorical basis, all responsive records to Plaintiffs' Russia Request pursuant to Exemption (b)(7)(A).   All responsive records that existed as of March 20, 2017 are now part of a pending investigation being conducted by the FBI under the direction of Special Counsel Mueller.   The FBI has demonstrated that the responsive records are categorically exempt and that no non-exempt information exists that can be reasonably segregated from exempt information and released to Plaintiffs.   Finally, as explained above, the FBI conducted a search that was reasonably calculated to locate responsive records—that is, the FBI has searched all files that are likely to contain responsive documents, by means of a manual review of the relevant investigative files that contain all responsive records.

**UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through C attached hereto are true and correct copies.

Executed this 26th day of July, 2017.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD, RYAN SHAPIRO          )
                                     )
        Plaintiffs,                  )
                                     )
            v.                       )        Civil Action No. 1: 16-cv-01827-KBJ
                                     )
UNITED STATES DEPARTMENT OF          )
TREASURY, et al                      )
                                     )
        Defendants                   )

# Exhibit A

**Sobonya, David P. (RMD) (FBI)**

| | |
|---|---|
| **From:** | Jeffrey Light <jeffrey@lawofficeofjeffreylight.com> |
| **Sent:** | Thursday, August 18, 2016 3:55 PM |
| **To:** | FOIPARequest |
| **Cc:** | jasonleopold@gmail.com; 'Ryan Noah Shapiro' |
| **Subject:** | FOIA Requests |
| **Attachments:** | 2016.08.17_FOIA_FBI_Trump-Judges_RQ.pdf; 2016.08.17_FOIA_FBI_Trump-Russia_RQ.pdf |

To whom it may concern:

Please find attached two FOIA requests submitted on behalf of my clients Jason Leopold and Ryan Noah Shapiro.

Thank you,

Jeffrey L. Light
LAW OFFICE OF JEFFREY L. LIGHT
1712 Eye St., NW
Suite 915
Washington, DC 20006
202.277.6213
Jeffrey@LawOfficeOfJeffreyLight.com


Jeffrey L. Light
LAW OFFICE OF JEFFREY L. LIGHT
1712 Eye St., NW
Suite 915
Washington, DC 20006
202-277-6213

18 Aug. 2016

Freedom of Information and Privacy Acts request:

To: Federal Bureau of Investigation (FBI)
Record/Information Dissemination Section (RIDS)

Submitted via email to FBI at foiparequest@ic.fbi.gov

This letter constitutes a request under the U.S. Freedom of Information and Privacy Acts (5 U.S.C. §552/552a) and the regulations promulgated thereunder. Please analyze the requested material under both 5 U.S.C. §552 and 5 U.S.C. §552a in order to produce the maximum number of results.

### Requestor 1

Ryan Noah Shapiro

Doctoral Candidate
Department of Science, Technology, & Society
Massachusetts Institute of Technology

Research Affiliate
Berkman Klein Center for Internet & Society
Harvard University
ryannoah@mit.edu
301-602-3063

c/o Law Office of Jeffrey L. Light
1712 Eye St., NW
Suite 915
Washington, DC 20006

### Requestor 2

Jason Leopold

Senior Investigative Journalist
Vice News

c/o Law Office of Jeffrey L. Light
1712 Eye St., NW
Suite 915
Washington, DC 20006

1

## RECORDS SOUGHT

**We request disclosure of any and all records, including investigative records, mentioning or referring to Donald J. Trump's statements on 9 August 2016, "If she gets to pick her judges, nothing you can do, folks," and "Although the Second Amendment people — maybe there is, I don't know."**

## INFORMATION REGARDING THE PROCESSING OF THIS REQUEST

Notwithstanding the fact that the FBI may have the ability to search for certain records centrally that previously could only be searched for by the field offices, we request that complete and thorough searches for any and all records constituting, mentioning, or referring to the subject(s) of our request be conducted in any and all indices, filing systems, databases, and locations maintained by FBI headquarters, any and all FBI field offices, any and all FBI resident agencies, any and all FBI Legal Attaches, any and all FBI and/or Joint Task Force offices, and any and all other FBI offices, units, branches, and/or other sub-divisions.

These searches should include but not be limited to searches of the records of the following offices, divisions, units, branches, and locations, as well as any and all subdivisions thereof.

Director, Chief of Staff, Deputy Director, Special Agents in Charge (SACs), the Office of Public Affairs, the Office of Congressional Affairs, the Office of the General Counsel, the Office of Equal Employment Opportunity, the Office of Professional Responsibility, the Office of the Ombudsman, the Office of Integrity and Compliance, Executive Assistant Director for National Security Branch/Associate Executive, Assistant Director for National Security Branch, Counterterrorism Division, Counterintelligence Division, Directorate of Intelligence, Weapons of Mass Destruction Directorate, Executive Assistant Director for Criminal, Cyber, Response, and Services Branch Criminal Investigative Division, Cyber Division, Critical Incident Response Group, International Operations Division, Office of Law Enforcement Coordination, Executive Assistant Director for Science and Technology Branch, Operational Technology Division, Laboratory Division, Criminal Justice Information Services Division, Associate Deputy Director, Resource Planning Office, Inspection Division, Facilities and Logistics Services Division, Finance Division, Records Management Division, Records Management Division ELSUR Records Policy Subunit (ERPS), Security Division, Executive Assistant Director for Information and Technology Branch, IT Management Division, IT Engineering Division, IT Services Division, Executive Assistant Director for Human Resources Branch, Training and Development Division, Human Resources Division, and the Government Relations Section.

This request also includes but is not limited to searches of the records of any and all previous iterations of any of the above offices, divisions, sections, and units (such as the FBI's Office of Congressional and Public Affairs, including but not limited to the Research Unit; and the FBI Freedom of Information-Privacy Acts Section, Records Management Division).

### Request for Main File and Cross-Reference Searches:

We request searches of any and all main file and *cross-reference* indices, filing systems, databases, and locations for any and all main file and *cross-reference* records constituting, mentioning, or referring to the subject(s) of our request.

Any and all main file and *cross-reference* records constituting, mentioning, or referring to the subject(s) of our request are responsive to our request.

### Request for ELSUR, MISUR, TESUR, and FISUR Searches:

Notwithstanding the fact that the FBI may be able to search for some MISUR and FISUR records through the Universal Index (UNI) of the Automated Case Support system (ACS), we request that main file, cross-reference, Electronic Case File (ECF), Investigative Case Management (ICM), ELSUR Records System (ERS), Sentinel, Investigative Data Warehouse (IDW), Secure Data Information System (SDIS), and Data Integration and Visualization System (DIVS) searches of any and all FBI indices, filing systems, databases, and locations be conducted for any and all electronic, microphone, technical, and physical surveillance records constituting, mentioning, or referring to the subject(s) of our request.

These searches for ELSUR, MISUR, TESUR, and FISUR records should include but not be limited to searches for "principals," "overhears," and "mentions." *Do not conduct searches for "principals" only.* These searches should also include but not be limited to searches for any and all ELSUR, MISUR, TESUR, and FISUR records at or within any and all FBI Headquarters, field office, resident agency, Legal Attaché, and task force indices, filing systems, databases, and locations utilizing the same search specifications described above.[1]

---

[1] Mr. Hardy himself admits in his 12 September 2013 "Fourth Declaration of David M. Hardy" to the U. S. District Court for the District of Columbia (Case 1:12-cv-01660-RMC) that "overhears" [and likely "mentions" as well] recorded after 1969 "cannot be retrieved through the FBIHQ ELSUR Index[,]" but rather only through the FBI field office ELSUR indices.

3

These searches should also include but not be limited to searches of the FBIHQ Records Management Division, ELSUR Records Policy Subunit (ERPS) for any and all records constituting, mentioning, or referring to the subject(s) of our request.

These searches should also include but not be limited to any and all FD-504a forms, FD-664 forms, FD-925 forms, FD-926 forms, FD-940 forms, FD-941 forms, ELSUR Administrative (ELA) subfiles, ELSUR Operations Technician (EOT) records, ELSUR Supervisor records, and Authorization for Interception Order Application records constituting, mentioning, or referring to the subject(s) of our request.

These searches should also include but not be limited to searches for records constituting, mentioning, or referring to any and all ELSUR, MISUR, TESUR, and FISUR searches conducted by the FBI of any and all other agencies' electronic surveillance databases and/or related databases.

### Request for Records Responsive to Text Searches of the ECF:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to full text searches of the Electronic Case File (ECF) application.[2]

### Request for Records Responsive to Searches of the ICM:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the Investigative Case Management (ICM) application.

### Request for Records Responsive to Searches of Sentinel:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of Sentinel.[3]

---

[2] As stated by FBI Record/Information Dissemination Section Chief, David M. Hardy, in his 31 January 2013 Declaration to the U. S. District Court for the District of Columbia (Case 1:12-cv-01660-RMC)(Document 9-1), the "Electronic Case File [ECF] serves as the central electronic repository for the FBI's official text-based documents. [....] Because the decision to index names in a specific document can vary from document to document, the text search [of the ECF] provide[s] a more comprehensive search of the CRS [Central Records System]."
[3] Sentinel is "an electronic information and case management system" implemented by the FBI in July 2012. For more on Sentinel, see U.S. Dept. of Justice, Office of the Inspector General, Audit Division, "Audit of the Status of the Federal Bureau of Investigation's Sentinel

**Request for Records Responsive to Searches of IDW:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the Investigative Data Warehouse (IDW).[4]

**Request for Records Responsive to Searches of DIVS:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the Data Integration and Visualization System (DIVS).[5]

**Request for FOI/PA Records, 190 Files, and 197 Files:**

We request disclosure of any and all records constituting, mentioning, or referring to Freedom of Information and/or Privacy Act's requests submitted by, on behalf of, or about the subject(s) of our request. This includes but is not limited to any and all

---

Program," Audit Report 14-31, Sept. 2014 (Available online at:
http://www.justice.gov/oig/reports/2014/a1431.pdf); Federal Bureau of Investigation,
"FBI Announces Deployment of Sentinel," 31 July Nov. 2012 (Available online at:
http://www.fbi.gov/news/pressrel/press-releases/fbi-announces-deployment-of-
sentinel); Federal Bureau of Information, "New Information/Case Management System
Enhances FBI Mission," Jan. 2013 (Available online at: http://www.fbi.gov/about-
us/itb/news-features/new-information-case-management-system-enhances-fbi-mission).
[4] According to the Congressional testimony of Michael F.A. Morehart, FBI Section Chief,
Terrorist Financing Operations Section, Counterterrorism Division, "IDW is a centralized,
web-enabled, closed system repository for intelligence and investigative data. This system,
maintained by the FBI, allows appropriately trained and authorized personnel throughout
the country to query for information of relevance to investigative and intelligence matters."
Morehart, Michael F.A., "Statement of Michael F.A. Morehart, Section Chief, Terrorist
Financing Operations Section, Counterterrorism Division, Federal Bureau of Investigation,
Before the House Committee on Financial Services," 26 May 2005 (Available online at:
http://www.fbi.gov/news/testimony/importance-of-financial-information-to-terrorism-
investigations-and-intelligence)
[5] The FBI's official website informs that prior to the 2011 introduction of the Data
Integration and Visualization System (DIVS), the process of adequately searching the FBI's
records systems was akin to "trying to find a needle in a haystack." However, continues the
FBI's website, in 2011, "the FBI deployed a new tool which encompasses the Bureau's most-
used databases while providing a single-source search capability that pulls information
directly from hundreds of databases and datasets called the Data Integration and
Visualization System (DIVS). DIVS provides the capability to search some of the most-used
databases, accessing hundreds of millions of documents, all from one location."
http://www.fbi.gov/about-us/itb/news-features/new-database-search-tool-will-aid-
bureau-investigations

records constituting, mentioning, or referring to FOIPA litigation pertaining to such FOIPA requests.

This also includes but is not limited to disclosure of any and all 190 files, 197 files that constitute, mention, or refer to the subject(s) of our request.

This also includes but is not limited to disclosure of any and all records responsive to searches of indices of responses to previous FOI/PA requests for any and all records that constitute, mention, or refer to the subject(s) of our request.

This also includes but is not limited to disclosure of any and all records responsive to searches of the FBI's FOIA Data Processing System (FDPS) and Request Tracking System (RTS) for any and all records that constitute, mention, or refer to the subject(s) of our request.

Additionally, if the FBI locates any records that constitute, mention, or refer to any FOIA/Privacy Act requests submitted by, on behalf of, about, or otherwise mentioning the subject(s) of our request, I also request disclosure of any and all processing notes, search slips, and any and all other records generated in the course of perfecting, locating, responding to, or otherwise processing those FOIPA requests.

### Request for Control Files:

We request disclosure of any and all control files (including but not limited to -0, -2, -5 control files) constituting, mentioning, or referring to the subject(s) of our request.

### Request for Informant Files:

We request disclosure of any and all informant files constituting, mentioning, or referring to the subject(s) of our request.

### Request for Blackball Files:

We request disclosure of any and all records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to any and all such records located in response to our request but considered by the FBI to be "blackball files".[6]

---

[6] Regarding the FBI's practice of blackballing files, see: http://www.truth-out.org/news/item/6130:revealed-the-fbis-secretive-practice-of-blackballing-files and http://www.truth-out.org/sites/default/files/1.16.12FBIblackball.pdf

6

**Request for "00" Files, & "0" Files:**

We request disclosure of any and all "00" (double zero) files and "0" (zero) files constituting, mentioning, or referring to the subject(s) of our request.[7]
Request for Top Secret, SCI, SAP, USAP, and Core Secrets Records:

We request disclosure of any and all Top Secret (TS) records, Sensitive Compartmented Information (SCI) records, Special Access Program records (SAP), Unacknowledged Special Access Program (USAP) records, and Core Secrets records that constitute, mention, or refer to the subject(s) of our request.[8] Our request includes but is not limited to searches of the Secure Data Information System (SDIS) for records that constitute, mention, or refer to the subject(s) of our request

**Request for Records Responsive to Searches of Indices and Databases:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of any and all of the following indices and databases: General index; Administrative Index (ADEX); Agitator Index; Alternate Offices Indices; Anonymous Letter File; Associates of Drug Enforcement Class I Narcotics Violators; Background Investigation Index –

---

[7] "Each [FBI] classification begins with a zero (0) file and a double zero (00) file, which are used for documents relating to the individual classification but which do not warrant an individual file. Most 00 files include material relating to the administrative history of the classification and document why the classification was initiated, changes in legislation modifying the Bureau's investigative responsibilities, investigative policy, unique investigative procedures, and jurisdictional disputes between the Bureau and other federal agencies. Before the 00 files were established, 0 files were sometimes used for policy documentation relating to the classification. But for the most part the 0 files now consist of citizen complaints, routine requests for information, general reference material and newspaper clippings. In 1977, the FBI began using the 0 files for one-serial (single document) cases that would previously have been separate case files." James Gregory Bradsher, "The FBI Records Appraisal," *Archival Issues*, Vol. 25, 1-2, 2000: 101-118. Additionally, while there is some overlap between FBI Headquarters "0" files and the "0" files of the various FBI fields offices, distinct 0 files are produced and maintained by FBI Headquarters and the various FBI field offices. Likewise, while there is some overlap between FBI Headquarters "00" files and the "00" files of the various FBI fields offices, distinct 00 files are produced and maintained by FBI Headquarters and the various FBI field offices. See http://www.archives.gov/records-
mgmt/rcs/schedules/departments/department-of-justice/rg-0065/n1-065-86-025_sf115.pdf.

[8] Since the FBI does not maintain these requested records on the ACS, a search of the ACS would definitionally constitute an inadequate search for these requested records. On the ACS not containing records classified above "Secret", see U.S. Department of Justice, Commission for Review of FBI Security Programs, "A Review of FBI Security Programs," 31 March 2002. Available at http://www.fas.org/irp/agency/doj/fbi/websterreport.html

Department of Justice; Background Investigation Index – White House, Other Executive Agencies, and Congress; Background Investigation Index – Department of Energy; ELSUR Records System (ERS), Bank Fraud and Embezzlement Index; Bank Robbery Albums; Bank Robbery Nickname Index; Bank Robbery Note File; Bank Robbery Suspect Index; Black Panther Party Photo Index; Black United Front Index; Car Ring Case Photo Albums; Car Ring Case Photo Album and Index; Car Ring Case Toll-Call Index, Car Ring Theft Working Index; Cartage Albums; Channelizing Index; Check Circular File; Computerized Telephone Number File Intelligence; Con Man Index; Confidence Game (Flimflam) Albums; Copyright Matters Index; Criminal Intelligence Index; Criminal Informant Index; Drug Enforcement Agency (DA) Class I Narcotics Violators Listing; Deserter Index; ELSUR Index; Evidence Control Index; Extremist Informant Index; Extremist Photo Albums; False Identities Index; False Identities Program List; False Identity Photo Albums; FBI/Inspector General Case Pointer System; FBI Wanted Persons Index; Foreign Counterintelligence (FCI) Asset Index; Foreign Police Cooperation Index; Fraud against the Government Index; Fugitive Bank Robbers File; General Security Index; Hoodlum License Plate Index; Identification Order Fugitive Flier File; Informant Index; Index of Informants in Other Field Offices; Interstate Transportation of Stolen Aircraft Photo Album; Internal Revenue Service (IRS) Wanted List; Key Activist Program Albums; Key Extremist Program Listing; Kidnapping Book; Known Check Passers Album; Known Gambler Index; La Cosa Nostra (LCN) Membership Index; Leased Line Letter Request Index; Mail Cover Index; Mail Cover Statistics Index; Military Deserter Index; National Bank Robbery Albums; National Fraudulent Check File; National Security Electronic Surveillance (ELSUR) Card File; National Security Electronic Surveillance File; Night Depository Trap Index; Organized Crime Photo Albums; Photospread Identification Elimination File; Prostitute Photo Albums; Rabble-Rouser Index; Reserve Index; Royal Canadian Mounted Police (RCMP) Wanted Circular File; Security Index; Security Informant Index; Security Subjects Control Index; Security Telephone Number Index; Selective Service Violators Index; Skyjack Fugitive Albums; Sources of Information Index; Special Services Index; Stolen Checks and Fraud-by-Wire Index; Stop Notices Index; Surveillance Locator Index; Symbionese Liberation Army (SLA) Index; Telephone Number Index – Gamblers; Telephone Subscribers and Toll Record Check Index; Thieves, Couriers, and Fences Photo Index; Toll Records Request Index; Top Burglar Albums; Top Echelon Criminal Informant Program Index; Top Ten Program File; Top Their Program Index; Truck Hijack Photo Albums; Truck Thief Suspect Photo Album; Traveling Criminal Photo Album; Veterans Administration (VA)/Federal Housing Administration (FHA) Matters Index; Wanted Fliers File; Weathermen Photo Album; Wheeldex; White House Special Index; Witness Protection Program Index; Wounded Knee Album, Secure Data Information System (SDIS), and Zylmage databases ("Zy").

**Request for Searches of Laboratory Records:**

8

We request disclosure of any and all records responsive to searches of any and all laboratory indices, filing systems, databases, and locations for any and all records constituting, mentioning, or referring to the subject(s) of our request. Our request includes but is not limited to searches of/for laboratory records.

### Request for Confidential Searches:

We request disclosure of any and all records responsive to searches of any and all confidential indices, filing systems, databases, and locations for any and all records constituting, mentioning, or referring to the subject(s) of our request.

### Request for Searches of Seized Asset and Forfeiture Information:

We request disclosure of any and all records responsive to searches of any and all indices, filing systems, databases, and locations pertaining to seized asset and/or forfeiture information for any and all records constituting, mentioning, or referring to the subject(s) of our request.

### Request for Records Responsive to Searches of the FBI's "Bureau Mailing Lists" records system:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the FBI's "Bureau Mailing lists" records system.

### Request for Searches of the "Special File Room":

We request disclosure of any and all records responsive to searches of the "Special File Room" for any and all records constituting, mentioning, or referring to the subject(s) of our request.

### Request for Records Responsive to Computer, Intranet, and Internal Network Searches:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of any and all systems of records that are available to the FBI through any computer, InterCommunication Intranet, or any other intranet or internal U.S. government or FBI network. Your searches of intranet and internal network systems of records should include but not be limited to: Bureaupedia, Intellipedia, and any wiki to which the FBI has access; Field Office Management System (FOIMS); National

9

Information Sharing Strategy (NISS) and its components, the Law Enforcement Online (LEO), Law Enforcement National Data Exchange (N-DEx), and OneDOJ; the FBI's Records/Information Dissemination Section (RIDS) and Work Process Unit (WPU) SharePoint sites , any other SharePoint sites available to the FBI; eChirp[9]; Subject Matter Expert (SME) pages; NCTC Online; FBI Top Secret/Sensitive Compartmented Information Operational Network (SCION); FBI Data Integration and Visualization System (DIVS); Delta; FISAMS; DWS/EDMS; Data Loading and Analysis System (DaLAS); Telephone Application; Clearwater; Investigative Data Warehouse; Guardian/eGuardian; Sentinel; Automated Case Support (ACS) Universal Index; ACS Electronic Case File; and ACS Investigative Case Management.

### Request for Training/Instructional Records:

We request disclosure of any and all training and/or instructional records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to training and/or instructional records used and/or maintained by the FBI in any and all locations, including but not limited to: FBI Headquarters (HQ), FBI field offices, FBI resident agencies, the FBI's Quantico training facility, the National Executive Institute (NEI), the Executive Development Institute (EDI), the Law Enforcement Executive Development Seminar (LEEDS), the International Law Enforcement Academy, and the FBI's Virtual Academy.

### Request for Intelligence Products:

We request disclosure of any and all FBI intelligence products that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to: Intelligence Information Reports (IIRs), Intelligence Bulletins, Situational Intelligence Reports, Assessments, Emerging Trend Reports, monthly (or otherwise periodic) emails from the Threat Monitoring Unit (TMU) to field offices, and Intelligence Briefings. This also includes but is not limited to any and all non-FBI intelligence products maintained by the FBI or to which the FBI has access, including but not limited to the "Threat Matrix", that constitute, mention, or refer to the subject(s) of our request.

### Request for Technical Request Records:

We request disclosure of any and all technical request records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to any and all requests for technical assistance, FD-871 forms, emails, Electronic Communications (EC), FD-5a forms, and/or any and all other records constituting or

---

[9]On eChirp, see http://www.washingtonpost.com/blogs/the-switch/wp/2013/11/01/u-s-intelligence-agencies-have-their-own-twitter-its-called-echirp/

generated in response to technical requests that constitute, mention, or refer to the subject(s) of our request.

**Request for NCIC Searches:**

We request disclosure of any and all records responsive to searches of any and all NCIC records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to: Article File; Gun File; Boat File; Securities File; Vehicle File; Vehicle and Boat Parts File; License Plate File; Missing Persons File; Foreign Fugitive File; Identity Theft File; Immigration Violator File; Protection Order File; Supervised Release File; Unidentified Persons File; U.S. Secret Service Protective File; Gang File; Known or Appropriately Suspected Terrorist File; and the Wanted Persons File.

**Request for Affiliated Searches:**

We request disclosure of any and all records responsive to searches of any and all records that constitute, mention, or refer to the subject(s) of our request located within any and all offices or other entities through which the FBI collaborates, trains, and/or otherwise works with non-governmental entities, including but not limited to the Domestic Security Alliance Council, the Business Alliance, Infragard, Academic Alliance, and the FBI Citizen's Academy.

**Request for Records Responsive to Searches of Downgraded and Obsolete Systems:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of any and all FBI systems of records that are still in existence but have had their funding eliminated, have been downgraded, and/or are considered obsolete.

**Request for Email Searches:**

We request disclosure of any and all records responsive to searches of any and all email records that constitute, mention, or refer to the subject(s) of our request in the email's subject line, body, metadata, "From", "To", "Cc", or "Bcc" lines, or attachments.

In searching for emails, you are instructed to search personal email accounts of any and all employees and former employees who did or may have sent or received emails regarding the subject(s) of our request.

You are also instructed to search institutional, public, shared, group, duty, task force,

11

and any and all other joint and/or multi-user email accounts which did or may have been utilized by each such employee and/or former employee.

Additionally, for each relevant email account identified, search all storage areas, including but not limited to the inbox folder and sub-folders, sent folder, deleted folder, and any and all archives.

Your searches for emails should also include but not be limited to Outlook, GroupWise, Exchange, FDPS, and SharePoint, as well as any and all other email systems utilized by the FBI.

### Request for Records Responsive to Searches of CORE, PRISM, BLARNEY, Upstream, Fairview, ORION, and Hemisphere:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the CORE, PRISM, BLARNEY, Upstream, Fairview, ORION, and Hemisphere systems/databases/projects.

### Request for Searches for CART Records:

We request disclosure of any and all records responsive to searches of any and all CART notes, reports, and other records constituting, mentioning, or referring to the subject(s) of our request.

### Request for Business Records Orders Records:

We request disclosure of any and all records responsive to searches of any and all business records orders[10] records constituting, mentioning, or referring to the subject(s) of our request.

### Request for additional Indices, Filing Systems, Databases, and Locations Searches:

---

[10] According to FBI RIDS' Section Chief, David Hardy, a business records order is an extremely important tool in combating terrorism and ensuring the safety of the United States. The order is issued by the FISA Court in cases where the FBI is conducting a foreign intelligence investigation not concerning a United States person, or is seeking to prevent international terrorism or clandestine intelligence activities. The issuance of such orders permits the FBI to obtain important records and substantive information relevant to the investigation. (Case 1:11-cv-07562-WHP Doc. 47 Filed 02/08/13, p. 19)

We request disclosure of any and all records responsive to searches of any and all FBI paper, manual, automatic, and digital indices, filing systems, databases, and locations for records constituting, mentioning, or referring to the subject(s) of our request. This includes but is not limited to any and all FBI paper, manual, automatic, and digital indices, filing systems, databases, and locations I have not specified by name, as well as those of which I may not be aware.

### Request for Ticklers:

We request disclosure of any and all records responsive to searches of any and all "ticklers" that constitute, mention, or refer to the subject(s) of our request.[11]

### Request for Duplicate Pages:

We request disclosure of any and all supposedly "duplicate" pages that constitute, mention, or refer to the subject(s) of our request. Scholars analyze records not only for the information available on any given page, but also for the relationships between that information and information on pages surrounding it. As such, though certain pages may have been previously released to me, the existence of those pages within new a context or contexts renders them functionally new pages. Therefore, the only way to properly analyze released information is to analyze that information within its proper context. Consequently, We request disclosure of all "duplicate" pages.

### Request for Searches for Open Source Material and Records Transferred to Outside Entities:

We request that in conducting the requested searches, the FBI process and disclose responsive records even if the FBI considers those records to be open source. This includes but is not limited to searches of/for records transferred by the FBI to entities outside the FBI, including but not limited to the National Archives and Records Administration (NARA).

### Request for Additional Included References:

---

[11] As articulated in *Campbell v. United States DOJ*, 164 F.3d 20, 27 n.1 (1998), "A 'tickler' is a duplicate [FBI] file containing copies of documents, usually kept by a supervisor. Such files can be of interest to a FOIA requester because they could contain documents that failed to survive in other filing systems or that include unique annotations."

As a component of the instant request, We request that any references to individuals for whom I have provided DOJ-361 forms or obituaries contained in the here-requested release be provided to me unredacted. Please refer any questions on this matter to Dennis J. Argall, FBI RIDS Assistant Section Chief and FOIPA Public Liaison Officer.

**Request for EC's:**

We request an Electronic Communication (EC) be sent to all FBI offices, sections, and divisions likely to possess responsive records. This EC should detail the requested records as well as all other relevant information contained in our request. This EC should further instruct all personnel within each office, section, and division to conduct a thorough search for any and all potentially responsive records in their possession, including but not limited to emails and draft documents.

I further request an email be sent to all Chief Division Counsels of all FBI field offices. This EC should detail the requested records as well as all other relevant information contained in our request. This EC should further instruct said counsel to search for any and all potentially responsive records within their offices.

**Instructions Regarding "Records":**

For the instant request, "records" includes but is not limited to: documents; reports; memoranda; letters; electronic files; "See Also" files; "Do Not File" files; "Official & Confidential" files; Nichols files; W. Mark Felt Files; Interesting Case write-ups; FBI Budget Records; numbered and lettered subfiles; 1A envelopes; 1C bulky evidence; routing slips; enclosures behind files (EBF's); "Personal & Confidential" files; restricted files; photographs, audio tapes & videotapes; "JUNE" files; "Obscene" Files; "Subversive" Indexes; Bulky Exhibits; control files; mail covers; trash covers; zero files; double zero files; Weekly Press Summary File; Monthly Administrative Reports; prosecutive report; nonprosecutive summary; investigative reports; negative results of investigation; Five-Year Reinvestigation; Public Financial Disclosure Reports; newspaper clippings; misconduct investigations; News Releases; Photostats; Originating Agency Identifier File; interview notes; investigative notes; FD-302s; National Periodical Summary File; Letterhead Memorandum (LHM); blind Memorandum; office Memorandum; SAC Memorandum; Media Matters Statistical Collection Form; Manuals; logs; job postings; administrative data; Law Enforcement Bulletin; Special Surveillance Group Daily Worksheet; Accomplishment Reports; cumulative/comparative reports; dead files; contracts; non-investigative files; legal files; Legat files; office of origin files; OPR records; Recreation Association records; cryptomaterials; recording of outside contacts; consensual monitoring transcriptions; inquiries from members of Congress; confidential source material; letters from chronic letter writers; and any

14

index citations relating to the subjects of our request or referencing the subjects of our request ("see also") in other files.

When processing the instant request, note the D.C. Circuit has held that agencies have a duty to construe the subject material of FOIA requests liberally to ensure responsive records are not overlooked. See *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). Accordingly, you are hereby instructed that the term "record" includes, but is not limited to: 1) all email communications to or from any individual within your agency; 2) memoranda; 3) inter-agency communications; 4) sound recordings; 5) tape recordings; 6) video or film recordings; 7) photographs; 8) notes; 9) notebooks; 10) indices; 11) jottings; 12) message slips; 13) letters or correspondence; 14) telexes; 15) telegrams; 16) facsimile transmissions; 17) statements; 18) policies; 19) manuals or binders; 20) books; 21) handbooks; 22) business records; 23) personnel records; 24) ledgers; 25) notices; 26) warnings; 27) affidavits; 28) declarations under penalty of perjury; 29) unsworn statements; 30) reports; 31) diaries; 32) calendars, regardless of whether they are handwritten, printed, typed, mechanically or electronically recorded or reproduced on any medium capable of conveying an image, such as paper, CDs, DVDs, or diskettes; or 33) surveys.

Furthermore, in line with the guidance issued by the Department of Justice ("DOJ") on 9 September 2008 to all federal agencies with records subject to the Freedom of Information Act, agency records that are currently in the possession of a U.S. Government contractor for purposes of records management remain subject to FOIA. Please ensure that your searches comply with this clarification on the effect of Section 9 of the OPEN Government Act of 2007 of the definition of a "record" for FOIPA purposes.

Additionally, the instant request includes but is not limited to records sent to outside third parties and records originating with outside third parties.

### Additional Instructions Regarding Searching and the Inadequacy of UNI Searches Alone to Satisfy this Request:

As should be clear from the above, FBI searches of the Universal Index (UNI) alone will not and cannot satisfy this request.

As detailed above, the instant request seeks disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of numerous FBI databases, applications, and file systems beyond UNI alone.

Definitionally, FBI searches for/releases of records responsive to searches of UNI will not and cannot satisfy the multiple potions of this request seeking disclosure of

15

records constituting, mentioning, or referring to the subject(s) of our request that are responsive to FBI databases, applications, and file systems other than UNI.

**Instructions Regarding Scope and Breadth of our request:**

Interpret the scope of this request broadly. The FBI is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

**Along these lines[12]:**

a) We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request.

This includes but is not limited to any and all records about any and all investigations that in any way involve or involved the subject(s) of our request and/or any and all agents or representatives thereof.

It also includes but is not limited to any and all records about any and all communications, contacts, correspondence, meetings, information exchanges, information provision, information accessing, cooperation, interactions, and/or general awareness of the subject(s) of our request by/with the FBI, the NJTTF, and/or any JTTF.

It also includes but is not limited to any and all records about any and all operations of the FBI constituting, mentioning, or referring to the subject(s) of our request.

It also includes but is not limited to any and all records that were prepared, received, transmitted, collected and/or maintained by the FBI, the Terrorist Screening Center, the National Joint Terrorism Task Force, and/or any Joint Terrorism Task Force constituting, mentioning, or referring to the subject(s) of our request.

If a subject or subjects of our request appear in any capacity within records prepared, received, transmitted, collected, and/or maintained by the FBI, the National Joint Terrorism Task Force, and/or any Joint Terrorism Task Force, we request disclosure of any and all such records.

---

[12] 39(a), 39(b), 39(c), and 39(d) are provided as specific components of section 39 but do not represent section 39 in its totality. 39(a), 39(b), 39(c), and 39(d) are provided in order to assist the FBI in locating the requested records. They are not intended to limit the scope or breadth of section 39 or of the instant request more broadly.

b) For all files requested herein, we request searches for, as well as review and disclosure of, any and all such files, including but not limited to any and all such files with any and all variations of alpha designator (or the lack of alpha designator or designators) anywhere in the Case ID. For example, a request for file 157-1240 would include but not be limited to files 157A-1240, 157B-1240, 157C-1240, 157D-1240, 157-A1240, 157-B1240, 157-C1240, 157-D1240, 157A-A1240, 157B-A1240, 157C-A1240, 157D-A1240, 157A-B1240, 157B-B1240, 157C-B1240, 157D-B1240, 157A-C1240, 157B-C1240, 157C-C1240, 157D-C1240, 157A-D1240, 157B-D1240, 157C-D1240, 157D-D1240, and so on.

c) For any and all files requested herein, we request searches for, as well as review and disclosure of, *entire files*. This includes but is not limited to any and all sub-files of any sort, including but not limited to any and all serials, as well as including but not limited to any and all non-serialized records.

We request such searches for, and review and disclosure of, entire files regardless of whether all records in that file otherwise constitute, mention, or refer to a subject or subjects of our request. If a subject or subjects of our request appear in any capacity in any file prepared, received, transmitted, collected, and/or maintained by the FBI, *the entirety of that file is responsive to our request.*

d) For each record in which a subject or subjects of our request appear in any capacity, we request searches for, as well as review and disclosure of, *that entire record.*

We request such searches for, and review and disclosure of, the entire record regardless of whether all pages in that record otherwise constitute, mention, or refer to a subject or subjects of our request. If a subject or subjects of our request appear in any capacity in any record prepared, received, transmitted, collected, and/or maintained by the FBI, *the entirety of that record is responsive to our request.*

### Instructions Regarding "Leads":

As required by the relevant case law, the FBI is required to follow any leads provided by the requestor and/or discovered by the FBI in the course of its searches for responsive records.

As required by the relevant case law, the FBI is required to perform additional searches when said leads indicate that records may be located in another FBI system.  Failure to follow clear leads is a violation of FOIA.

### Instructions Regarding Drives and Storage Media:

We request searches of/for any and all records constituting, mentioning, or

17

referring to the subject(s) of our request stored: locally on individual computers (all drives); on remote-access drives assigned to individual users; on shared drives; on removable media and storage drives; and/or on mobile computing equipment, such as temporarily assigned laptops and smart devices.

### Instructions Regarding Federated Searches:

If the FBI performs any federated searches (i.e., a search across multiple databases), ensure that the user performing the searches has access to all content of all the databases searched.

### Instructions Regarding Release of Records as Color Records Rather than Black and White Records:

We request disclosure of all records in color. The release of color records as black and white records functionally erases important color-based information on those records. For example, FBI investigative records often contain meaningful color-coded information. By releasing such records in black and white, the existence of this important information is rendered invisible. For another example, hyperlinks on Intranet and Internet site records are frequently apparent only by virtue of being a distinct color. By releasing such records in black and white, the existence of these hyperlinks is also often rendered invisible.

### Instructions Regarding Photographs & other Image-based Materials:

We request that any photographs and/or other image-based records responsive to our request be released to me in their original or comparable forms, quality, and resolution. For example, if a photograph was taken digitally, or if the FBI maintains a photograph digitally, We request disclosure of the original digital image file, not a reduced resolution version of that image file nor a printout and scan of that image file. Likewise, if a photograph was originally taken as a color photograph, We request disclosure of that photograph as a color image, not a black and white image. This section of our request applies not only to requested records consisting entirely of photographs and/or other visual materials, but also to requested records that are partially comprised of photographs and/or other visual materials. Please contact me for any clarification on this point.

### Instructions Regarding Previously Processed Records and the Inadequacy of Previously Processed Records to Satisfy this Request:

The instant FOIPA request is a request for records responsive to *new* complete and thorough searches for, and processing of, any and all records constituting, mentioning, or referring to the subject(s) of our request. Definitionally, FBI searches for/releases of previously processed records will not and cannot satisfy this request.

## Instructions and Request Regarding Missing Records:

Place any "missing" records that are responsive or potentially responsive to our request on "special locate" and advise me in writing that you have done so.

If any record(s) responsive or potentially responsive to our request cannot be located, we request disclosure of any and all records constituting, mentioning, or referring to the missing record(s). This includes but is not limited to: 1) any and all records indicating the existence (including the former existence) of the missing record(s); 2) any and all records indicating the potential responsiveness of the missing record(s) to our request(s); 3) any and all processing notes, search slips, and/or other records generated in the course of perfecting, locating, responding to, or otherwise processing the request(s) to which the missing record(s) are or may be responsive; 4) any and all other records constituting, mentioning, or referring to the missing record(s).

## Instructions Regarding Transmission & Format:

We request the FBI provide any releases stemming from this request via email (ryannoah@mit.edu) or other electronic transmission on a rolling basis.

The FBI may electronically transmit the requested records to Shapiro as files that have been compressed using WinZip software or any other file compression software.[13]

If the FBI is unwilling to provide me the requested records via email or other electronic transmission, we request any releases stemming from the this request be provided to me in digital format (soft-copy) on a compact disk or other like media.

## Instructions Regarding Exemptions and Segregability:

We call your attention to President Obama's 21 January 2009 Memorandum concerning the Freedom of Information Act, in which he states:

---

[13] Manufactured by WinZip Computing (a subsidiary of Corel Corporation), WinZip software is a leading file compression software. Files compressed using WinZip software use the .Zip file format. Files compressed using WinZip software are often referred to as "Zipped" files or "Zip" files.

> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA [....] The presumption of disclosure should be applied to all decisions involving FOIA.[14]

In the same Memorandum, President Obama added that government information should not be kept confidential "merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."

Finally, President Obama ordered that "The Freedom of Information Act should be administered with a clear presumption: In the case of doubt, openness prevails."

Nonetheless, if any responsive record or portion thereof is claimed to be exempt from production, FOIA/PA statutes provide that even if some of the requested material is properly exempt from mandatory disclosure, all segregable portions must be released. If documents are denied in part or in whole, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Please provide a complete itemized inventory and a detailed factual justification of total or partial denial of documents. Specify the number of pages in each document and the total number of pages pertaining to this request. For "classified" material denied, please include the following information: the classification (confidential, secret or top secret); identity of the classifier; date or event for automatic declassification or classification review or downgrading; if applicable, identity of official authorizing extension of automatic declassification or review past six years; and, if applicable, the reason for extended classification beyond six years.

We expect, as mandated by FOIA, that the remaining non-exempt portions of redacted documents will be released.

Please release all pages regardless of the extent of excising, even if all that remains are the stationery headings or administrative markings.

In addition, we ask that your agency exercise its discretion to release records which may be technically exempt, but where withholding serves no important public interest.

**Additional Instructions:**

Please produce all records with administrative markings and pagination included.

---

[14] President Barack Obama, "Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act," January 21, 2009; <http://www.whitehouse.gov/the_press_office/FreedomofInformationAct/.>

Please send a memo (copy to us) to the appropriate units to assure that no records related to this request are destroyed.

Unless we explicitly authorize otherwise in writing, we do not and will not authorize the administrative closure of our request. Should you need to contact us at any time for clarification or resolution of issues pertaining to this topic, please do not hesitate to do so. Shapiro can be reached by email at ryannoah@mit.edu and by phone at 301-602-3063. If leaving a message, please leave that message by email rather than phone voice mail.

### FEE CATEGORY AND REQUEST FOR A FEE WAIVER

#### 1. REQUEST FOR INCLUSION IN NEWS MEDIA FEE CATEGORY

##### REQUESTORS ARE REPRESENTATIVES OF THE NEWS MEDIA AND REQUEST CLASSIFICATION AS REPRESENTATIVES OF THE NEWS MEDIA FOR FOIPA FEE CATEGORY PURPOSES

The OPEN Government Act of 2007 established, and the United States Court of Appeals for the District of Columbia reaffirmed and explicated upon in *Cause of Action vs. FTC* (13-5335) (25 Aug. 2015), for FOIA purposes,

> 'a representative of the news media' means any person or entity that gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. 552(a)(4)(A)(ii)

Requestor Leopold is a Senior Investigative Journalist for *Vice News*.[15]

Requestor Shapiro is an ABD doctoral candidate at the Massachusetts Institute of Technology. I am in the PhD program in History, Anthropology, and Science, Technology, & Society (HASTS) in MIT's Department of Science, Technology, & Society (STS).[16]

Shapiro is also a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University.[17]

Shapiro is an historian of national security, the policing of dissent, and governmental transparency.

---

[15] https://news.vice.com/contributor/jason-leopold

[16] http://web.mit.edu/hasts/graduate/shapiro.html

[17] Shapiro has been accepted as a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University for 2016-2017.
https://cyber.law.harvard.edu/newsroom/2016_2017_community

21

Among other things, Shapiro's work has exposed improper collusion between a major agricultural lobby and a U.S. government agency entity[18]; sparked a federal investigation of this improper collusion, resulting in the disgraced resignation of the president of the agency entity[19]; and sparked the introduction of bipartisan legislation to curb future similar abuses by government and industry.[20] Shapiro's work has also exposed the FBI's unprecedented utilization of classified remote-installation malware to circumvent animal rights activists encryption in 2003, as well as the DOJ's subsequent failure to inform Congress of such utilization as mandated by Congress.[21] Shapiro's work has also exposed the FBI's policy of instructing FBI agents to withhold surveillance technical details from prosecutors and defendants alike.[22] Shapiro's work has also exposed FBI consideration of federal terrorism charges against animal protectionists who expose horrific conditions on factory farms.[23] Shapiro's work has also exposed FBI targeting of Nelson Mandela and the anti-Apartheid movement as a Communist plot imperiling U.S. national security. This included but was not limited to FBI placement of a confidential informant within Nelson Mandela's inner circle in order to provide political information to the FBI on Mandela and his anti-apartheid associates while the FBI was tasked with protecting Mandela upon Mandela's post-prison tour of the United States in 1990.[24]

Shapiro's research and analysis on issues at the intersections of national security, the policing of dissent, and transparency are regularly featured in national and international media outlets. Media outlets that have covered Shapiro's work include but are not limited to:

*The New York Times, The Washington Post, The Los Angeles Times, The Wall Street Journal, USA Today, CNN, U.S. News & World Report, The Associated Press, Agence France-Presse, Politico, Business Insider, The International Business Times, The Atlantic, The Guardian, ABC News, CBS News, NPR, PBS, BBC World Service, The Nation, Mother Jones, Democracy Now!, The Hill, McClatchy DC, New Republic, National Journal, Columbia Journalism Review, Legal Times, PolicyMic, Government*

---

[18] http://bigstory.ap.org/article/a0a7a3fb1f6449f992f2410c577d919b/apnewsbreak-egg-group-scrambled-over-eggless-mayo-maker; http://www.theguardian.com/us-news/2015/sep/02/usda-american-egg-board-hampton-creek-just-mayo

[19] http://bigstory.ap.org/article/c7813b5fe68745d2a40c1d078c1542f5/egg-industry-group-ceo-steps-down-after-vegan-mayo-scramble

[20] https://www.theguardian.com/business/2016/jul/14/usda-reform-bill-agriculture-beef-eggs

[21] http://www.nytimes.com/2016/04/14/technology/fbi-tried-to-defeat-encryption-10-years-ago-files-show.html?smid=tw-nytimes&smtyp=cur&_r=0

[22] http://www.usatoday.com/story/news/2016/04/20/fbi-memos-surveillance-secrecy/83280968/

[23] https://ccrjustice.org/files/11.12.29_Greenscare_VideotapersTerrorists_LATimes.pdf

[24] http://america.aljazeera.com/articles/2014/5/28/fbi-spied-mandeladocuments.html; http://www.usnews.com/news/articles/2014/07/10/the-fbi-spied-on-nelson-mandela-in-1990-as-communist-threat.

*Executive, Inc., Wired, Fortune, Fox News, Fox Nation, The American Conservative, The Daily Caller, Breitbart News, Reason, New York Daily News, The Chicago Tribune, The Boston Globe, MSN News, Salon, Slate, The Daily Beast, Quartz, Vice News, Huffington Post, HuffPost Live, Yahoo News, Christian Science Monitor, Boston Business Journal, AOL News, The San Francisco Chronicle, The Houston Chronicle, The Minneapolis Star Tribune, The Independent, The Mirror, The Daily Mail, Black Entertainment Television (BET), The Boston Metro, The San Francisco Business Times, The Silicon Valley Business Journal, The Afro-American, Raw Story, The Chicago Defender, The NorthStar News & Analysis, The Atlanta Black Star, The Hollywood Reporter, NYC Today, The Mail & Guardian, Courthouse News, Japan Times, EatDrinkPolitics, Univsion, HispanTV, Al Jazeera America, Grist, Ecorazzi, Green Is the New Red, PC World, PC Mag, Computer World, SearchSecurity, IntelNews, Komando.com, VegNews, Truth-Out, FireDogLake, ShadowProof, Alternet, The Verge, Consumerist, Boing Boing, Techdirt, Tickle The Wire, The Public Record,* and *the Freedom of the Press Foundation.*

Shapiro has presented invited scholarly and popular lectures on topics at the intersections of national security, the policing of dissent, and transparency at numerous leading institutions and venues. These include but are not limited to:

The Massachusetts Institute of Technology, the National Institutes of Health (NIH), the Kennedy School of Government at Harvard University, Harvard Law School, Yale Law School, the New York City Bar Association, the Max Planck Institute for the History of Science (Berlin, Germany), Université catholique de l'Ouest (Angers, France), the University of California, Santa Barbara, The College of William & Mary, Boston University, American University (Washington, DC), The Cooper Union for the Advancement of Science and Art (New York City), the National Press Club (Washington, DC), the conference of the National Lawyers Guild, the History of Science Society, the American Anthropological Association, the Society for the Social History of Medicine, the Conference on Policy History, the American Society for Environmental History, DEFCON, Boston University, University College Cork (Cork, Ireland), Suffolk University Law School, the City University of New York Law School, The Base community center in Brooklyn, NY, and Burning Books bookstore (Buffalo, NY).

Shapiro's research and analysis have also been featured in television and film documentaries. For example, in February 2016, a documentary centrally featuring Shapiro's FOIA research and analysis aired on the cable channel Pivot. The documentary is titled "Activists or Terrorists" and was directed by award-winning filmmaker Brian Knappenberger and narrated by Academy Award nominated actress Maggie Gyllenhaal. This documentary constitutes episode five of Knappenberger's acclaimed documentary series "Truth and Power." *The New York Times* included the documentary episode "Activists or Terrorists" in its influential "What to Watch" list.[25] "Activists or Terrorists" is now available for viewing on iTunes and Amazon.com.

---

[25] http://www.nytimes.com/2016/02/19/arts/television/what-to-watch-friday.html

Shapiro's research and analysis have also been featured in popular and scholarly exhibits:

1. In 2006, Shapiro co-curated an historical exhibit at NIH on an issue pertaining to the relationships between the political functioning of national security, governmental transparency and secrecy, and dueling American social movements. This exhibit was titled "Animals As cold Warriors: Missiles, Medicine, and Man's Best Friend." The exhibit was held at the History of Medicine Division of the National Library of Medicine at NIH. Shapiro co-curated this exhibit with, and at the invitation of, the Deputy Chief of the History of Medicine Division of the National Library of Medicine. A digital overview version of the exhibit is available online.[26]

Additionally, elements of Shapiro's exhibit at NIH were subsequently incorporated into a 2008-2009 exhibit at the Lyndon Baines Johnson Presidential Library in Austin Texas. This exhibit at the Johnson Presidential Library was titled "To the Moon: The American Space Program in the 1960s".[27]

2. In 2014, some of Shapiro's FOIA work pertaining to the surveillance and policing of political dissent by the FBI and other agencies; FBI and other agency operations pertaining to secrecy; the political functioning of national security; and FBI and other agency FOIPA operations was rendered and displayed as part of an award-winning installation art exhibit in New York City. This exhibit is called "Monument to Cold War Victory: Clandestine Reading Room." The exhibit was held at the Lubalin Gallery at the Cooper Union for the Advancement of Science and Art. The exhibit will now be touring to additional galleries throughout the United States.

For this exhibit, Shapiro also served as a content contributor and expert consultant regarding the surveillance and policing of political dissent by the FBI and other agencies; FBI and other agency operations pertaining to secrecy; the political functioning of national security; and FBI and other agency FOIPA operations.

Additionally, in November 2014, on the closing evening of the New York City exhibition of "Monument to Cold War Victory: Clandestine Reading Room," the exhibit hosted a panel discussion titled "Dissent Under Surveillance." On this panel discussion, Shapiro presented a lecture on the relationships between the surveillance and policing of political dissent by the FBI and other agencies; FBI and other agency operations pertaining to secrecy; the political functioning of national security; and FBI and other agency FOIPA operations. This panel discussion, including Shapiro's lecture, was free, open to the public, and well attended.

Shapiro is a representative of several news outlets.

Shapiro is a researcher, analyst, and reporter for GreenIsTheNewRed.com (GNR). GNR is a popular online news outlet directed by GNR founder, Will Potter. Potter is

---

[26] See http://www.nlm.nih.gov/exhibition/animals/
[27] http://www.lbjlibrary.org/press/to-the-moon

the Marsh Professor of Journalism at the Michigan University[28], an award-winning journalist[29], author[30], TED Senior Fellow[31], and Knight-Wallace Journalism Fellow[32] specializing in coverage of the policing of dissent, dissident politics and culture, national security, freedom of information, and civil liberties.

Shapiro is a representative of Verso Books. Based in New York City and London, Verso Books[33] is the largest independent radical publishing house in the English-speaking world. *Harper's* has called Verso Book's "Anglo-America's preeminent radical press." Verso Books' authors have been awarded the Nobel Prize, the Pulitzer Prize, the Man Booker Prize, the Bancroft Prize, and many other prestigious international awards for scholarship, literature, and journalism. *The Sunday Times* has described Verso Books as "a rigorously intelligent publisher", and *The Nation* magazine has written that, "the scale of the achievement of Verso is clear." Verso Books has committed to publishing multiple books of Shapiro's pertaining to the operations and activities of the FBI, DOJ, and other U.S. agencies.

Shapiro is a representative of Sparrow Media.[34] Sparrow Media is a boutique news outlet and news publicity agency specializing in coverage of grassroots initiatives for social change that are often overlooked by mainstream media. Based out of New York City, Sparrow Media regularly produces exclusive news content on such grassroots initiatives, and disseminates this content to thousands of journalists and media outlets, activists and activist organizations, and the broader public. Shapiro is Sparrow Media's lead researcher, analyst, and writer for news stories regarding Freedom of Information and Privacy Act requests, agency FOIPA operations, and issues of governmental secrecy and transparency broadly.

---

[28] http://willpotter.com/marsh-professor-journalism/297/

[29] http://blog.ted.com/will-potter-on-of-treating-environmentalists-like-terrorists/

[30] https://www.kirkusreviews.com/book-reviews/will-potter/green-new-red/

[31] https://www.ted.com/speakers/will_potter

[32] http://blog.ted.com/will-potter-on-of-treating-environmentalists-like-terrorists/

[33] http://www.versobooks.com

[34] For examples, see:

http://www.sparrowmedia.net/2013/11/fbi-designates-mit-foia-ryan-shapiro-national-security/

http://www.sparrowmedia.net/2014/01/nelson-mandela-cia-foia-lawsuit/

http://www.sparrowmedia.net/2014/03/nsa-national-defense-espionage-act-mit-foia-nelson-mandela/

http://www.sparrowmedia.net/2014/05/fbi-releases-nelson-mandela-documents-response-mit-students-foia-lawsuit/

http://www.sparrowmedia.net/2014/06/jason-leopold-ryan-shapiro-sue-cia-for-senate-spying/

http://www.sparrowmedia.net/2014/07/nelson-mandela-fbi-spy-files/

http://www.sparrowmedia.net/2014/12/one-man-is-single-handedly-standing-in-the-way-of-the-foia-improvement-act/

http://www.sparrowmedia.net/2016/02/federal-judge-shuts-down-fbis-attempted-foia-power-grab-rules-fbi-may-not-unilaterally-invent-new-exemptions-to-withhold-documents/

At Sparrow Media, Shapiro is also a researcher, analyst, and writer for news stories regarding a range of topics including but not limited to national security, civil liberties, social and racial justice, human rights, animal and environmental advocacy, privacy and surveillance, and the policing of dissent.

Shapiro is a reporter/contributor for *The Public Record*.[35] *The Public Record*[36] is a web-based cutting-edge public interest news outlet specializing in coverage of national security, civil liberties, human rights, free speech, the policing of dissent, governmental transparency and secrecy, and agency FOIPA operations. The mission of *The Public Record* is to produce and publish in-depth original reporting on a wide range of domestic and international issues.

Shapiro is a representative of Vice News. Shapiro is collaborating with Vice News Senior Investigative Reporter, Jason Leopold on numerous research and writing projects.

Shapiro has authored published popular and academic pieces based upon his research and analysis in outlets in additional to those enumerated above

For examples, see:

i) https://www.nlm.nih.gov/exhibition/animals/credits.html

ii) http://muse.jhu.edu/journals/vic/summary/v051/51.1.shapiro.html

iii) http://www.nlgmasslawyers.org/animal-enterprise-terrorism-act/

iv) http://truth-out.org/news/item/21626-is-freeing-a-duck-terrorism

v) https://lanternbooks.presswarehouse.com/books/BookDetail.aspx?productID=395352

As illustrated above, in addition to the specific news media outlets of which Shapiro is a representative, Shapiro's professional activities on the whole are especially organized around the production and dissemination of original knowledge to multiple, diverse, and extensive segments of the public.

---

[35] http://pubrecord.org/about/
[36] http://pubrecord.org

26

## 2. REQUEST TO BE CLASSIFIED AS AN EDUCATIONAL REQUESTOR

Shapiro is an ABD doctoral candidate at the Massachusetts Institute of Technology. Shapiro is in the PhD program in History, Anthropology, and Science, Technology, & Society (HASTS) in MIT's Department of Science, Technology, & Society (STS).[37]

Shapiro is also a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University.[38]

Shapiro is an historian of national security, the policing of dissent, and governmental transparency.  The disclosures sought in the instant request are sought pursuant of this end.

## 3. REQUEST FOR A COMPLETE WAIVER OF FEES

We are willing to pay any reasonable expenses associated with this request, however, as the purpose of the requested disclosure is in full conformity with the statutory requirements for a waiver of fees, we formally request such a waiver. We request a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309,1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

The Department of Justice regulations provide a two-part test for determining whether a requestor is entitled to a waiver of fees.  Records responsive to a request are to be furnished without charge if the requestor has demonstrated that "(i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (ii) Disclosure of the information is not primarily in the commercial interest of the requestor." 28 CFR 16.11(k). The DOJ regulations further require the consideration of the following factors in determining whether the requestor has met the first part of the test: the subject of the request; the informative value of the information to be disclosed; the contribution to an understanding of the subject by the public likely to result from disclosure; and the significance of the contribution to public understanding. 28 CFR 16.11(k)(2). To

---

[37] http://web.mit.edu/hasts/graduate/shapiro.html
[38] I have been accepted as a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University for 2016-2017.
https://cyber.law.harvard.edu/newsroom/2016_2017_community

determine whether the second part of the test is met, the DOJ regulations require consideration of the following factors: the existence and magnitude of a commercial interest; and the primary interest in disclosure. As explained below, my request clearly meets this two-part test, and is also the type of request, and I am the type of requestor, for which courts have held that waiver of fees is required under FOIA.

DISCLOSURE OF THE REQUESTED RECORDS IS IN THE PUBLIC INTEREST BECAUSE IT IS LIKELY TO CONTRIBUTE SIGNIFICANTLY TO THE PUBLIC UNDERSTANDING OF THE OPERATIONS AND ACTIVITIES OF THE GOVERNMENT.

A. The subject of the requested records concerns the operations and activities of the FBI and broader government. The subject of the requested records concerns identifiable operations and activities of the FBI and broader government, specifically, the response of the FBI to the referenced comments.

B. The disclosure is likely to contribute to an understanding of government operations and activities because the disclosable portions of the requested records will be meaningfully informative about those operations and activities. The vast majority of disclosable information is not already in the public domain, in either a duplicative or a substantially identical form, and therefore the disclosure would add substantial new information to the public's understanding of how the FBI responds to comments such as those referenced in "Records Sought" above.

C. The disclosure of the requested records will contribute to the increased understanding of a broad audience of persons interested in the subject, rather than merely our own individual understanding.

As explained herein in more detail, the audience likely to be interested in the subject is broad, and includes, historians of modern American government, politics, culture, and national security; journalists reporting on American politics, government, national security, and society; civil liberties attorneys; and the general public.

We firmly intend to analyze the requested records in order to facilitate significant expansion of public understanding of government operations. As demonstrated in sections, "1. Request for Inclusion in News Media Fee Category" and "2. Request To Be Classified as an Educational Requestor" above, we are well qualified to perform this analysis and dissemination.

*As should be clear from the above, we have the ability and firm intention to disseminate to the public significant expansions of understanding of government operations based on our analysis of the requested disclosures.*

28

Additional Note on Journalistic Research and the Public Interest:

The case law on this matter is emphatically clear that journalistic inquiry alone satisfies the FOIPA public interest requirement. *National Treasury Employees Union v. Griffin*, 811 F.2d, 644, 649 (D.C. Cir. 1987).

Further, as articulated in the amendments to FOIA established by the OPEN Government Act of 2007, we solidly meet the applicable definition of "a representative of the news media[.]" The OPEN Government Act of 2007 established that for FOIA purposes,

> 'a representative of the news media' means any person or entity that gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. 552(a)(4)(A)(ii)

Based on our firmly intended research, analysis, and information dissemination activities, we clearly satisfy this description.

Therefore, in that we are "person[s] or entit[ies] that gather[] information of potential interest to the public, use[] its editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience," we solidly meet the applicable definition of "a representative of the news media." As such, we have again more than satisfied the requirement for a fee waiver.

The disclosure of the requested records is likely to contribute "significantly" to public understanding of government operations and activities because disclosure would enhance to a significant extent the public's understanding of the subject in question as compared to the level of public understanding existing prior to the disclosure

## DISCLOSURE OF THE INFORMATION IS NOT PRIMARILY IN OUR COMMERCIAL INTEREST.

Any commercial interest that we have which would be furthered by the requested disclosure is *de minimis*.

We are requesting the release of records to analyze for use in the dissemination of news articles.  Though journalists do get paid for writing news articles, payment is not the primary purpose for which such work is conducted.  As the D.C. Circuit explained in *National Treasury Employees Union v. Griffin*, 811 F.2d, 644, 649 (D.C. Cir. 1987), "While private interests clearly drive journalists (and journals) in their search for news, they advance those interests almost exclusively by dissemination of news, so that the public benefit from news distribution necessarily rises with any private benefit. Thus it is reasonable to presume that furnishing journalists with information will primarily benefit the general public[.]"

29

The disclosure of records will significantly benefit the public interest, and this benefit to the public is of vastly greater magnitude than our minimal commercial interest.

Additionally, the courts and the legislature have been deeply invested in ensuring that FOIPA duplication and search fees are not used by government agencies to deliberately or otherwise thwart legitimate scholarly and journalistic research:

This was made clear in *Better Government Ass'n v. Department of State,* in which the court ruled that, "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Government Ass'n v. Department of State*, 780 F.2d 86, 89 (D.C. Cir. 1986).

This point is further elaborated in *Ettlinger v. FBI,*

> The legislative history of the FOIA clearly indicates that Congress intended that the public interest standard for fee waivers embodied in 5 U.S.C. § 552(a)(4)(A) be liberally construed. In 1974, Congress added the fee waiver provision as an amendment to the FOIA in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests. The 1974 Senate Report and the sources relied on in it make it clear that the public interest/benefit test was consistently associated with requests from journalists, scholars and non-profit public interest groups. There was a clear message from Congress that "this public-interest standard should be liberally construed by the agencies." The 1974 Conference Report, in which differences between the House and Senate amendments were ironed out, retained the Senate-originated public-interest fee waiver standard and further stated "the conferees intend that fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." Further evidence of congressional intent regarding the granting of fee waivers comes from a 1980 Senate Subcommittee report. The report stated that "excessive fee charges . . . and refusal to waive fees in the public interest remain . . . 'toll gates' on the public access road to information." The report noted that "most agencies have also been too restrictive with regard to granting fee waivers for the indigent, news media, scholars . . ." and recommended that the Department of Justice develop guidelines to deal with these fee waiver problems. The report concluded: The guidelines should recommend that each agency authorize as part of its FOIA regulations fee waivers for the indigent, the news media, researchers, scholars, and non-profit public interest groups. The guidelines should note that the presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public.

30

The court, in its *Ettlinger v. FBI* decision, continued that on 18 December 1980, a

> policy statement was sent to the heads of all federal departments and agencies accompanied by a cover memorandum from then United States Attorney General Civiletti which stated that he had "concluded that the Federal Government often fails to grant fee waivers under the Freedom of Information Act when requesters have demonstrated that sufficient public interest exists to support such waivers." The Attorney General went on to state: Examples of requesters who should ordinarily receive consideration of partial fee waivers, at minimum, would be representatives of the news media or public interest organizations, and historical researchers. *Such waivers should extend to both search and copying fees, and in appropriate cases, complete rather than partial waivers should be granted.*

## 4. CONCLUSION

As demonstrated above, the disclosure of the requested records will significantly contribute to expanded public understanding of government operations. Requestors are representatives of the news media. Requestor Shapiro is also an educational requestor. Requesters have the intent and ability to disseminate this significant expansion of public understanding of government operations. The public interest in this significant expansion of public understanding of government operations far outweighs any commercial interest of our own in the requested release. Accordingly, our fee waiver request amply satisfies the rules of 6 C.F.R. 5.11(k). Legislative history and judicial authority emphatically support this determination. For these reasons, and based upon their extensive elaboration above, requesters request a full waiver of fees be granted, and that requestors be classified as representatives of the news media for FOIPA fee category purposes, and that requestor Shapiro additionally be classified as an educational requestor for FOIPA fee category purposes. Requesters will appeal any denial of our request for a waiver of fees and fee category classifications, and will take the issue to the courts if necessary.

\*\*\*

Please do not hesitate to contact us if you have any questions concerning this request.

Thank you. We appreciate your time and attention to this matter.

31

Ryan Noah Shapiro and Jason Leopold

We seek expedited treatment for the attached request.

   1. *The requested information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity.*

The requested information involves an actual or alleged Federal government activity and there exists an urgent need to inform the public about this activity. There is an urgent need for the information requested because of the upcoming election.

   2. *We are persons primarily engaged in disseminating information.*

Requestor Jason Leopold is a Senior Investigative Reporter at VICE News.

Requestor Ryan Noah Shapiro is a PhD candidate in the Department of Science, Technology, & Society at the Massachusetts Institute of Technology, as well as a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University, as well as a representative of several news media outlets.

   3. *Certification*

I certify the foregoing to be true and correct to the best of my knowledge and belief.

_____          _____
Jason Leopold                                   Date

_____          17 Aug. 2016
Ryan Noah Shapiro                             _____
                                                          Date

18 Aug. 2016

Freedom of Information and Privacy Acts request:

To: Federal Bureau of Investigation (FBI)
Record/Information Dissemination Section (RIDS)

Submitted via email to FBI at foiparequest@ic.fbi.gov

This letter constitutes a request under the U.S. Freedom of Information and Privacy
Acts (5 U.S.C. §552/552a) and the regulations promulgated thereunder. Please
analyze the requested material under both 5 U.S.C. §552 and 5 U.S.C. §552a in order
to produce the maximum number of results.

## Requestor 1

Ryan Noah Shapiro

Doctoral Candidate
Department of Science, Technology, & Society
Massachusetts Institute of Technology

Research Affiliate
Berkman Klein Center for Internet & Society
Harvard University
ryannoah@mit.edu
301-602-3063

c/o Law Office of Jeffrey L. Light
1712 Eye St., NW
Suite 915
Washington, DC 20006

## Requestor 2

Jason Leopold

Senior Investigative Journalist
Vice News

c/o Law Office of Jeffrey L. Light
1712 Eye St., NW
Suite 915
Washington, DC 20006

1

## RECORDS SOUGHT

**We request disclosure of any and all records, including investigative records, mentioning or referring to Donald J. Trump's statement on 27 July 2016, "Russia, if you're listening, I hope you're able to find the 30,000 emails that are missing," and "I think you will probably be rewarded mightily by our press."**

## INFORMATION REGARDING THE PROCESSING OF THIS REQUEST

Notwithstanding the fact that the FBI may have the ability to search for certain records centrally that previously could only be searched for by the field offices, we request that complete and thorough searches for any and all records constituting, mentioning, or referring to the subject(s) of our request be conducted in any and all indices, filing systems, databases, and locations maintained by FBI headquarters, any and all FBI field offices, any and all FBI resident agencies, any and all FBI Legal Attaches, any and all FBI and/or Joint Task Force offices, and any and all other FBI offices, units, branches, and/or other sub-divisions.

These searches should include but not be limited to searches of the records of the following offices, divisions, units, branches, and locations, as well as any and all subdivisions thereof.

Director, Chief of Staff, Deputy Director, Special Agents in Charge (SACs), the Office of Public Affairs, the Office of Congressional Affairs, the Office of the General Counsel, the Office of Equal Employment Opportunity, the Office of Professional Responsibility, the Office of the Ombudsman, the Office of Integrity and Compliance, Executive Assistant Director for National Security Branch/Associate Executive, Assistant Director for National Security Branch, Counterterrorism Division, Counterintelligence Division, Directorate of Intelligence, Weapons of Mass Destruction Directorate, Executive Assistant Director for Criminal, Cyber, Response, and Services Branch Criminal Investigative Division, Cyber Division, Critical Incident Response Group, International Operations Division, Office of Law Enforcement Coordination, Executive Assistant Director for Science and Technology Branch, Operational Technology Division, Laboratory Division, Criminal Justice Information Services Division, Associate Deputy Director, Resource Planning Office, Inspection Division, Facilities and Logistics Services Division, Finance Division, Records Management Division, Records Management Division ELSUR Records Policy Subunit (ERPS), Security Division, Executive Assistant Director for Information and Technology Branch, IT Management Division, IT Engineering Division, IT Services Division, Executive Assistant Director for Human Resources Branch, Training and Development Division, Human Resources Division, and the Government Relations Section.

2

This request also includes but is not limited to searches of the records of any and all previous iterations of any of the above offices, divisions, sections, and units (such as the FBI's Office of Congressional and Public Affairs, including but not limited to the Research Unit; and the FBI Freedom of Information-Privacy Acts Section, Records Management Division).

**Request for Main File and Cross-Reference Searches:**

We request searches of any and all main file and *cross-reference* indices, filing systems, databases, and locations for any and all main file and *cross-reference* records constituting, mentioning, or referring to the subject(s) of our request.

Any and all main file and *cross-reference* records constituting, mentioning, or referring to the subject(s) of our request are responsive to our request.

**Request for ELSUR, MISUR, TESUR, and FISUR Searches:**

Notwithstanding the fact that the FBI may be able to search for some MISUR and FISUR records through the Universal Index (UNI) of the Automated Case Support system (ACS), we request that main file, cross-reference, Electronic Case File (ECF), Investigative Case Management (ICM), ELSUR Records System (ERS), Sentinel, Investigative Data Warehouse (IDW), Secure Data Information System (SDIS), and Data Integration and Visualization System (DIVS) searches of any and all FBI indices, filing systems, databases, and locations be conducted for any and all electronic, microphone, technical, and physical surveillance records constituting, mentioning, or referring to the subject(s) of our request.

These searches for ELSUR, MISUR, TESUR, and FISUR records should include but not be limited to searches for "principals," "overhears," and "mentions." *Do not conduct searches for "principals" only.* These searches should also include but not be limited to searches for any and all ELSUR, MISUR, TESUR, and FISUR records at or within any and all FBI Headquarters, field office, resident agency, Legal Attaché, and task force indices, filing systems, databases, and locations utilizing the same search specifications described above.[1]

---

[1] Mr. Hardy himself admits in his 12 September 2013 "Fourth Declaration of David M. Hardy" to the U. S. District Court for the District of Columbia (Case 1:12-cv-01660-RMC) that "overhears" [and likely "mentions" as well] recorded after 1969 "cannot be retrieved through the FBIHQ ELSUR Index[,]" but rather only through the FBI field office ELSUR indices.

These searches should also include but not be limited to searches of the FBIHQ Records Management Division, ELSUR Records Policy Subunit (ERPS) for any and all records constituting, mentioning, or referring to the subject(s) of our request.

These searches should also include but not be limited to any and all FD-504a forms, FD-664 forms, FD-925 forms, FD-926 forms, FD-940 forms, FD-941 forms, ELSUR Administrative (ELA) subfiles, ELSUR Operations Technician (EOT) records, ELSUR Supervisor records, and Authorization for Interception Order Application records constituting, mentioning, or referring to the subject(s) of our request.

These searches should also include but not be limited to searches for records constituting, mentioning, or referring to any and all ELSUR, MISUR, TESUR, and FISUR searches conducted by the FBI of any and all other agencies' electronic surveillance databases and/or related databases.

### Request for Records Responsive to Text Searches of the ECF:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to full text searches of the Electronic Case File (ECF) application.[2]

### Request for Records Responsive to Searches of the ICM:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the Investigative Case Management (ICM) application.

### Request for Records Responsive to Searches of Sentinel:

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of Sentinel.[3]

---

[2] As stated by FBI Record/Information Dissemination Section Chief, David M. Hardy, in his 31 January 2013 Declaration to the U. S. District Court for the District of Columbia (Case 1:12-cv-01660-RMC)(Document 9-1), the "Electronic Case File [ECF] serves as the central electronic repository for the FBI's official text-based documents. [....] Because the decision to index names in a specific document can vary from document to document, the text search [of the ECF] provide[s] a more comprehensive search of the CRS [Central Records System]."
[3] Sentinel is "an electronic information and case management system" implemented by the FBI in July 2012. For more on Sentinel, see U.S. Dept. of Justice, Office of the Inspector General, Audit Division, "Audit of the Status of the Federal Bureau of Investigation's Sentinel

4

**Request for Records Responsive to Searches of IDW:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the Investigative Data Warehouse (IDW).[4]

**Request for Records Responsive to Searches of DIVS:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the Data Integration and Visualization System (DIVS).[5]

**Request for FOI/PA Records, 190 Files, and 197 Files:**

We request disclosure of any and all records constituting, mentioning, or referring to Freedom of Information and/or Privacy Act's requests submitted by, on behalf of, or about the subject(s) of our request. This includes but is not limited to any and all

---

Program," Audit Report 14-31, Sept. 2014 (Available online at:
http://www.justice.gov/oig/reports/2014/a1431.pdf); Federal Bureau of Investigation,
"FBI Announces Deployment of Sentinel," 31 July Nov. 2012 (Available online at:
http://www.fbi.gov/news/pressrel/press-releases/fbi-announces-deployment-of-
sentinel); Federal Bureau of Information, "New Information/Case Management System
Enhances FBI Mission," Jan. 2013 (Available online at: http://www.fbi.gov/about-
us/itb/news-features/new-information-case-management-system-enhances-fbi-mission).
[4] According to the Congressional testimony of Michael F.A. Morehart, FBI Section Chief,
Terrorist Financing Operations Section, Counterterrorism Division, "IDW is a centralized,
web-enabled, closed system repository for intelligence and investigative data. This system,
maintained by the FBI, allows appropriately trained and authorized personnel throughout
the country to query for information of relevance to investigative and intelligence matters."
Morehart, Michael F.A., "Statement of Michael F.A. Morehart, Section Chief, Terrorist
Financing Operations Section, Counterterrorism Division, Federal Bureau of Investigation,
Before the House Committee on Financial Services," 26 May 2005 (Available online at:
http://www.fbi.gov/news/testimony/importance-of-financial-information-to-terrorism-
investigations-and-intelligence)
[5] The FBI's official website informs that prior to the 2011 introduction of the Data
Integration and Visualization System (DIVS), the process of adequately searching the FBI's
records systems was akin to "trying to find a needle in a haystack." However, continues the
FBI's website, in 2011, "the FBI deployed a new tool which encompasses the Bureau's most-
used databases while providing a single-source search capability that pulls information
directly from hundreds of databases and datasets called the Data Integration and
Visualization System (DIVS). DIVS provides the capability to search some of the most-used
databases, accessing hundreds of millions of documents, all from one location."
http://www.fbi.gov/about-us/itb/news-features/new-database-search-tool-will-aid-
bureau-investigations

records constituting, mentioning, or referring to FOIPA litigation pertaining to such FOIPA requests.

This also includes but is not limited to disclosure of any and all 190 files, 197 files that constitute, mention, or refer to the subject(s) of our request.

This also includes but is not limited to disclosure of any and all records responsive to searches of indices of responses to previous FOI/PA requests for any and all records that constitute, mention, or refer to the subject(s) of our request.

This also includes but is not limited to disclosure of any and all records responsive to searches of the FBI's FOIA Data Processing System (FDPS) and Request Tracking System (RTS) for any and all records that constitute, mention, or refer to the subject(s) of our request.

Additionally, if the FBI locates any records that constitute, mention, or refer to any FOIA/Privacy Act requests submitted by, on behalf of, about, or otherwise mentioning the subject(s) of our request, I also request disclosure of any and all processing notes, search slips, and any and all other records generated in the course of perfecting, locating, responding to, or otherwise processing those FOIPA requests.


**Request for Control Files:**

We request disclosure of any and all control files (including but not limited to -0, -2, -5 control files) constituting, mentioning, or referring to the subject(s) of our request.


**Request for Informant Files:**

We request disclosure of any and all informant files constituting, mentioning, or referring to the subject(s) of our request.


**Request for Blackball Files:**

We request disclosure of any and all records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to any and all such records located in response to our request but considered by the FBI to be "blackball files".[6]

---

[6] Regarding the FBI's practice of blackballing files, see: http://www.truth-out.org/news/item/6130:revealed-the-fbis-secretive-practice-of-blackballing-files and http://www.truth-out.org/sites/default/files/1.16.12FBIblackball.pdf

6

**Request for "00" Files, & "0" Files:**

We request disclosure of any and all "00" (double zero) files and "0" (zero) files constituting, mentioning, or referring to the subject(s) of our request.[7]
Request for Top Secret, SCI, SAP, USAP, and Core Secrets Records:

We request disclosure of any and all Top Secret (TS) records, Sensitive Compartmented Information (SCI) records, Special Access Program records (SAP), Unacknowledged Special Access Program (USAP) records, and Core Secrets records that constitute, mention, or refer to the subject(s) of our request.[8] Our request includes but is not limited to searches of the Secure Data Information System (SDIS) for records that constitute, mention, or refer to the subject(s) of our request

**Request for Records Responsive to Searches of Indices and Databases:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of any and all of the following indices and databases: General index; Administrative Index (ADEX); Agitator Index; Alternate Offices Indices; Anonymous Letter File; Associates of Drug Enforcement Class I Narcotics Violators; Background Investigation Index –

---

[7] "Each [FBI] classification begins with a zero (0) file and a double zero (00) file, which are used for documents relating to the individual classification but which do not warrant an individual file. Most 00 files include material relating to the administrative history of the classification and document why the classification was initiated, changes in legislation modifying the Bureau's investigative responsibilities, investigative policy, unique investigative procedures, and jurisdictional disputes between the Bureau and other federal agencies. Before the 00 files were established, 0 files were sometimes used for policy documentation relating to the classification. But for the most part the 0 files now consist of citizen complaints, routine requests for information, general reference material and newspaper clippings. In 1977, the FBI began using the 0 files for one-serial (single document) cases that would previously have been separate case files." James Gregory Bradsher, "The FBI Records Appraisal," *Archival Issues*, Vol. 25, 1-2, 2000: 101-118. Additionally, while there is some overlap between FBI Headquarters "0" files and the "0" files of the various FBI fields offices, distinct 0 files are produced and maintained by FBI Headquarters and the various FBI field offices. Likewise, while there is some overlap between FBI Headquarters "00" files and the "00" files of the various FBI fields offices, distinct 00 files are produced and maintained by FBI Headquarters and the various FBI field offices. See http://www.archives.gov/records-mgmt/rcs/schedules/departments/department-of-justice/rg-0065/n1-065-86-025_sf115.pdf.

[8] Since the FBI does not maintain these requested records on the ACS, a search of the ACS would definitionally constitute an inadequate search for these requested records. On the ACS not containing records classified above "Secret", see U.S. Department of Justice, Commission for Review of FBI Security Programs, "A Review of FBI Security Programs," 31 March 2002. Available at http://www.fas.org/irp/agency/doj/fbi/websterreport.html

Department of Justice; Background Investigation Index – White House, Other Executive Agencies, and Congress; Background Investigation Index – Department of Energy; ELSUR Records System (ERS), Bank Fraud and Embezzlement Index; Bank Robbery Albums; Bank Robbery Nickname Index; Bank Robbery Note File; Bank Robbery Suspect Index; Black Panther Party Photo Index; Black United Front Index; Car Ring Case Photo Albums; Car Ring Case Photo Album and Index; Car Ring Case Toll-Call Index, Car Ring Theft Working Index; Cartage Albums; Channelizing Index; Check Circular File; Computerized Telephone Number File Intelligence; Con Man Index; Confidence Game (Flimflam) Albums; Copyright Matters Index; Criminal Intelligence Index; Criminal Informant Index; Drug Enforcement Agency (DA) Class I Narcotics Violators Listing; Deserter Index; ELSUR Index; Evidence Control Index; Extremist Informant Index; Extremist Photo Albums; False Identities Index; False Identities Program List; False Identity Photo Albums; FBI/Inspector General Case Pointer System; FBI Wanted Persons Index; Foreign Counterintelligence (FCI) Asset Index; Foreign Police Cooperation Index; Fraud against the Government Index; Fugitive Bank Robbers File; General Security Index; Hoodlum License Plate Index; Identification Order Fugitive Flier File; Informant Index; Index of Informants in Other Field Offices; Interstate Transportation of Stolen Aircraft Photo Album; Internal Revenue Service (IRS) Wanted List; Key Activist Program Albums; Key Extremist Program Listing; Kidnapping Book; Known Check Passers Album; Known Gambler Index; La Cosa Nostra (LCN) Membership Index; Leased Line Letter Request Index; Mail Cover Index; Mail Cover Statistics Index; Military Deserter Index; National Bank Robbery Albums; National Fraudulent Check File; National Security Electronic Surveillance (ELSUR) Card File; National Security Electronic Surveillance File; Night Depository Trap Index; Organized Crime Photo Albums; Photospread Identification Elimination File; Prostitute Photo Albums; Rabble-Rouser Index; Reserve Index; Royal Canadian Mounted Police (RCMP) Wanted Circular File; Security Index; Security Informant Index; Security Subjects Control Index; Security Telephone Number Index; Selective Service Violators Index; Skyjack Fugitive Albums; Sources of Information Index; Special Services Index; Stolen Checks and Fraud-by-Wire Index; Stop Notices Index; Surveillance Locator Index; Symbionese Liberation Army (SLA) Index; Telephone Number Index – Gamblers; Telephone Subscribers and Toll Record Check Index; Thieves, Couriers, and Fences Photo Index; Toll Records Request Index; Top Burglar Albums; Top Echelon Criminal Informant Program Index; Top Ten Program File; Top Their Program Index; Truck Hijack Photo Albums; Truck Thief Suspect Photo Album; Traveling Criminal Photo Album; Veterans Administration (VA)/Federal Housing Administration (FHA) Matters Index; Wanted Fliers File; Weathermen Photo Album; Wheeldex; White House Special Index; Witness Protection Program Index; Wounded Knee Album, Secure Data Information System (SDIS), and Zylmage databases ("Zy").

**Request for Searches of Laboratory Records:**

We request disclosure of any and all records responsive to searches of any and all laboratory indices, filing systems, databases, and locations for any and all records constituting, mentioning, or referring to the subject(s) of our request. Our request includes but is not limited to searches of/for laboratory records.

**Request for Confidential Searches:**

We request disclosure of any and all records responsive to searches of any and all confidential indices, filing systems, databases, and locations for any and all records constituting, mentioning, or referring to the subject(s) of our request.

**Request for Searches of Seized Asset and Forfeiture Information:**

We request disclosure of any and all records responsive to searches of any and all indices, filing systems, databases, and locations pertaining to seized asset and/or forfeiture information for any and all records constituting, mentioning, or referring to the subject(s) of our request.

**Request for Records Responsive to Searches of the FBI's "Bureau Mailing Lists" records system:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the FBI's "Bureau Mailing lists" records system.

**Request for Searches of the "Special File Room":**

We request disclosure of any and all records responsive to searches of the "Special File Room" for any and all records constituting, mentioning, or referring to the subject(s) of our request.

**Request for Records Responsive to Computer, Intranet, and Internal Network Searches:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of any and all systems of records that are available to the FBI through any computer, InterCommunication Intranet, or any other intranet or internal U.S. government or FBI network. Your searches of intranet and internal network systems of records should include but not be limited to: Bureaupedia, Intellipedia, and any wiki to which the FBI has access; Field Office Management System (FOIMS); National

9

Information Sharing Strategy (NISS) and its components, the Law Enforcement Online (LEO), Law Enforcement National Data Exchange (N-DEx), and OneDOJ; the FBI's Records/Information Dissemination Section (RIDS) and Work Process Unit (WPU) SharePoint sites , any other SharePoint sites available to the FBI; eChirp[9]; Subject Matter Expert (SME) pages; NCTC Online; FBI Top Secret/Sensitive Compartmented Information Operational Network (SCION); FBI Data Integration and Visualization System (DIVS); Delta; FISAMS; DWS/EDMS; Data Loading and Analysis System (DaLAS); Telephone Application; Clearwater; Investigative Data Warehouse; Guardian/eGuardian; Sentinel; Automated Case Support (ACS) Universal Index; ACS Electronic Case File; and ACS Investigative Case Management.

**Request for Training/Instructional Records:**

We request disclosure of any and all training and/or instructional records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to training and/or instructional records used and/or maintained by the FBI in any and all locations, including but not limited to: FBI Headquarters (HQ), FBI field offices, FBI resident agencies, the FBI's Quantico training facility, the National Executive Institute (NEI), the Executive Development Institute (EDI), the Law Enforcement Executive Development Seminar (LEEDS), the International Law Enforcement Academy, and the FBI's Virtual Academy.

**Request for Intelligence Products:**

We request disclosure of any and all FBI intelligence products that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to: Intelligence Information Reports (IIRs), Intelligence Bulletins, Situational Intelligence Reports, Assessments, Emerging Trend Reports, monthly (or otherwise periodic) emails from the Threat Monitoring Unit (TMU) to field offices, and Intelligence Briefings. This also includes but is not limited to any and all non-FBI intelligence products maintained by the FBI or to which the FBI has access, including but not limited to the "Threat Matrix", that constitute, mention, or refer to the subject(s) of our request.

**Request for Technical Request Records:**

We request disclosure of any and all technical request records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to any and all requests for technical assistance, FD-871 forms, emails, Electronic Communications (EC), FD-5a forms, and/or any and all other records constituting or

---

[9]On eChirp, see http://www.washingtonpost.com/blogs/the-switch/wp/2013/11/01/u-s-intelligence-agencies-have-their-own-twitter-its-called-echirp/

10

generated in response to technical requests that constitute, mention, or refer to the subject(s) of our request.

**Request for NCIC Searches:**

We request disclosure of any and all records responsive to searches of any and all NCIC records that constitute, mention, or refer to the subject(s) of our request. This includes but is not limited to: Article File; Gun File; Boat File; Securities File; Vehicle File; Vehicle and Boat Parts File; License Plate File; Missing Persons File; Foreign Fugitive File; Identity Theft File; Immigration Violator File; Protection Order File; Supervised Release File; Unidentified Persons File; U.S. Secret Service Protective File; Gang File; Known or Appropriately Suspected Terrorist File; and the Wanted Persons File.

**Request for Affiliated Searches:**

We request disclosure of any and all records responsive to searches of any and all records that constitute, mention, or refer to the subject(s) of our request located within any and all offices or other entities through which the FBI collaborates, trains, and/or otherwise works with non-governmental entities, including but not limited to the Domestic Security Alliance Council, the Business Alliance, Infragard, Academic Alliance, and the FBI Citizen's Academy.

**Request for Records Responsive to Searches of Downgraded and Obsolete Systems:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of any and all FBI systems of records that are still in existence but have had their funding eliminated, have been downgraded, and/or are considered obsolete.

**Request for Email Searches:**

We request disclosure of any and all records responsive to searches of any and all email records that constitute, mention, or refer to the subject(s) of our request in the email's subject line, body, metadata, "From", "To", "Cc", or "Bcc" lines, or attachments.

In searching for emails, you are instructed to search personal email accounts of any and all employees and former employees who did or may have sent or received emails regarding the subject(s) of our request.

You are also instructed to search institutional, public, shared, group, duty, task force,

11

and any and all other joint and/or multi-user email accounts which did or may have been utilized by each such employee and/or former employee.

Additionally, for each relevant email account identified, search all storage areas, including but not limited to the inbox folder and sub-folders, sent folder, deleted folder, and any and all archives.

Your searches for emails should also include but not be limited to Outlook, GroupWise, Exchange, FDPS, and SharePoint, as well as any and all other email systems utilized by the FBI.

**Request for Records Responsive to Searches of CORE, PRISM, BLARNEY, Upstream, Fairview, ORION, and Hemisphere:**

We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of the CORE, PRISM, BLARNEY, Upstream, Fairview, ORION, and Hemisphere systems/databases/projects.

**Request for Searches for CART Records:**

We request disclosure of any and all records responsive to searches of any and all CART notes, reports, and other records constituting, mentioning, or referring to the subject(s) of our request.

**Request for Business Records Orders Records:**

We request disclosure of any and all records responsive to searches of any and all business records orders[10] records constituting, mentioning, or referring to the subject(s) of our request.

**Request for additional Indices, Filing Systems, Databases, and Locations Searches:**

---

[10] According to FBI RIDS' Section Chief, David Hardy, a business records order is an extremely important tool in combating terrorism and ensuring the safety of the United States. The order is issued by the FISA Court in cases where the FBI is conducting a foreign intelligence investigation not concerning a United States person, or is seeking to prevent international terrorism or clandestine intelligence activities. The issuance of such orders permits the FBI to obtain important records and substantive information relevant to the investigation. (Case 1:11-cv-07562-WHP Doc. 47 Filed 02/08/13, p. 19)

We request disclosure of any and all records responsive to searches of any and all FBI paper, manual, automatic, and digital indices, filing systems, databases, and locations for records constituting, mentioning, or referring to the subject(s) of our request. This includes but is not limited to any and all FBI paper, manual, automatic, and digital indices, filing systems, databases, and locations I have not specified by name, as well as those of which I may not be aware.

### Request for Ticklers:

We request disclosure of any and all records responsive to searches of any and all "ticklers" that constitute, mention, or refer to the subject(s) of our request.[11]

### Request for Duplicate Pages:

We request disclosure of any and all supposedly "duplicate" pages that constitute, mention, or refer to the subject(s) of our request. Scholars analyze records not only for the information available on any given page, but also for the relationships between that information and information on pages surrounding it. As such, though certain pages may have been previously released to me, the existence of those pages within new a context or contexts renders them functionally new pages. Therefore, the only way to properly analyze released information is to analyze that information within its proper context. Consequently, We request disclosure of all "duplicate" pages.

### Request for Searches for Open Source Material and Records Transferred to Outside Entities:

We request that in conducting the requested searches, the FBI process and disclose responsive records even if the FBI considers those records to be open source. This includes but is not limited to searches of/for records transferred by the FBI to entities outside the FBI, including but not limited to the National Archives and Records Administration (NARA).

### Request for Additional Included References:

---

[11] As articulated in *Campbell v. United States DOJ*, 164 F.3d 20, 27 n.1 (1998), "A 'tickler' is a duplicate [FBI] file containing copies of documents, usually kept by a supervisor. Such files can be of interest to a FOIA requester because they could contain documents that failed to survive in other filing systems or that include unique annotations."

13

As a component of the instant request, We request that any references to individuals for whom I have provided DOJ-361 forms or obituaries contained in the here-requested release be provided to me unredacted. Please refer any questions on this matter to Dennis J. Argall, FBI RIDS Assistant Section Chief and FOIPA Public Liaison Officer.

### Request for EC's:

We request an Electronic Communication (EC) be sent to all FBI offices, sections, and divisions likely to possess responsive records. This EC should detail the requested records as well as all other relevant information contained in our request. This EC should further instruct all personnel within each office, section, and division to conduct a thorough search for any and all potentially responsive records in their possession, including but not limited to emails and draft documents.

I further request an email be sent to all Chief Division Counsels of all FBI field offices.  This EC should detail the requested records as well as all other relevant information contained in our request. This EC should further instruct said counsel to search for any and all potentially responsive records within their offices.

### Instructions Regarding "Records":

For the instant request, "records" includes but is not limited to: documents; reports; memoranda; letters; electronic files; "See Also" files; "Do Not File" files; "Official & Confidential" files; Nichols files; W. Mark Felt Files; Interesting Case write-ups; FBI Budget Records; numbered and lettered subfiles; 1A envelopes; 1C bulky evidence; routing slips; enclosures behind files (EBF's); "Personal & Confidential" files; restricted files; photographs, audio tapes & videotapes; "JUNE" files; "Obscene" Files; "Subversive" Indexes; Bulky Exhibits; control files; mail covers; trash covers; zero files; double zero files; Weekly Press Summary File; Monthly Administrative Reports; prosecutive report; nonprosecutive summary; investigative reports; negative results of investigation; Five-Year Reinvestigation; Public Financial Disclosure Reports; newspaper clippings; misconduct investigations; News Releases; Photostats; Originating Agency Identifier File; interview notes; investigative notes; FD-302s; National Periodical Summary File; Letterhead Memorandum (LHM); blind Memorandum; office Memorandum; SAC Memorandum; Media Matters Statistical Collection Form; Manuals; logs; job postings; administrative data; Law Enforcement Bulletin; Special Surveillance Group Daily Worksheet; Accomplishment Reports; cumulative/comparative reports; dead files; contracts; non-investigative files; legal files; Legat files; office of origin files; OPR records; Recreation Association records; cryptomaterials; recording of outside contacts; consensual monitoring transcriptions; inquiries from members of Congress; confidential source material; letters from chronic letter writers; and any

14

index citations relating to the subjects of our request or referencing the subjects of our request ("see also") in other files.

When processing the instant request, note the D.C. Circuit has held that agencies have a duty to construe the subject material of FOIA requests liberally to ensure responsive records are not overlooked. See *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). Accordingly, you are hereby instructed that the term "record" includes, but is not limited to: 1) all email communications to or from any individual within your agency; 2) memoranda; 3) inter-agency communications; 4) sound recordings; 5) tape recordings; 6) video or film recordings; 7) photographs; 8) notes; 9) notebooks; 10) indices; 11) jottings; 12) message slips; 13) letters or correspondence; 14) telexes; 15) telegrams; 16) facsimile transmissions; 17) statements; 18) policies; 19) manuals or binders; 20) books; 21) handbooks; 22) business records; 23) personnel records; 24) ledgers; 25) notices; 26) warnings; 27) affidavits; 28) declarations under penalty of perjury; 29) unsworn statements; 30) reports; 31) diaries; 32) calendars, regardless of whether they are handwritten, printed, typed, mechanically or electronically recorded or reproduced on any medium capable of conveying an image, such as paper, CDs, DVDs, or diskettes; or 33) surveys.

Furthermore, in line with the guidance issued by the Department of Justice ("DOJ") on 9 September 2008 to all federal agencies with records subject to the Freedom of Information Act, agency records that are currently in the possession of a U.S. Government contractor for purposes of records management remain subject to FOIA. Please ensure that your searches comply with this clarification on the effect of Section 9 of the OPEN Government Act of 2007 of the definition of a "record" for FOIPA purposes.

Additionally, the instant request includes but is not limited to records sent to outside third parties and records originating with outside third parties.

### Additional Instructions Regarding Searching and the Inadequacy of UNI Searches Alone to Satisfy this Request:

As should be clear from the above, FBI searches of the Universal Index (UNI) alone will not and cannot satisfy this request.

As detailed above, the instant request seeks disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request that are responsive to searches of numerous FBI databases, applications, and file systems beyond UNI alone.

Definitionally, FBI searches for/releases of records responsive to searches of UNI will not and cannot satisfy the multiple potions of this request seeking disclosure of

15

records constituting, mentioning, or referring to the subject(s) of our request that are responsive to FBI databases, applications, and file systems other than UNI.

**Instructions Regarding Scope and Breadth of our request:**

Interpret the scope of this request broadly. The FBI is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

**Along these lines[12]:**

a) We request disclosure of any and all records constituting, mentioning, or referring to the subject(s) of our request.

This includes but is not limited to any and all records about any and all investigations that in any way involve or involved the subject(s) of our request and/or any and all agents or representatives thereof.

It also includes but is not limited to any and all records about any and all communications, contacts, correspondence, meetings, information exchanges, information provision, information accessing, cooperation, interactions, and/or general awareness of the subject(s) of our request by/with the FBI, the NJTTF, and/or any JTTF.

It also includes but is not limited to any and all records about any and all operations of the FBI constituting, mentioning, or referring to the subject(s) of our request.

It also includes but is not limited to any and all records that were prepared, received, transmitted, collected and/or maintained by the FBI, the Terrorist Screening Center, the National Joint Terrorism Task Force, and/or any Joint Terrorism Task Force constituting, mentioning, or referring to the subject(s) of our request.

If a subject or subjects of our request appear in any capacity within records prepared, received, transmitted, collected, and/or maintained by the FBI, the National Joint Terrorism Task Force, and/or any Joint Terrorism Task Force, we request disclosure of any and all such records.

---

[12] 39(a), 39(b), 39(c), and 39(d) are provided as specific components of section 39 but do not represent section 39 in its totality. 39(a), 39(b), 39(c), and 39(d) are provided in order to assist the FBI in locating the requested records. They are not intended to limit the scope or breadth of section 39 or of the instant request more broadly.

b) For all files requested herein, we request searches for, as well as review and disclosure of, any and all such files, including but not limited to any and all such files with any and all variations of alpha designator (or the lack of alpha designator or designators) anywhere in the Case ID. For example, a request for file 157-1240 would include but not be limited to files 157A-1240, 157B-1240, 157C-1240, 157D-1240, 157-A1240, 157-B1240, 157-C1240, 157-D1240, 157A-A1240, 157B-A1240, 157C-A1240, 157D-A1240, 157A-B1240, 157B-B1240, 157C-B1240, 157D-B1240, 157A-C1240, 157B-C1240, 157C-C1240, 157D-C1240, 157A-D1240, 157B-D1240, 157C-D1240, 157D-D1240, and so on.

c) For any and all files requested herein, we request searches for, as well as review and disclosure of, *entire files*. This includes but is not limited to any and all sub-files of any sort, including but not limited to any and all serials, as well as including but not limited to any and all non-serialized records.

We request such searches for, and review and disclosure of, entire files regardless of whether all records in that file otherwise constitute, mention, or refer to a subject or subjects of our request. If a subject or subjects of our request appear in any capacity in any file prepared, received, transmitted, collected, and/or maintained by the FBI, *the entirety of that file is responsive to our request.*

d) For each record in which a subject or subjects of our request appear in any capacity, we request searches for, as well as review and disclosure of, *that entire record.*

We request such searches for, and review and disclosure of, the entire record regardless of whether all pages in that record otherwise constitute, mention, or refer to a subject or subjects of our request. If a subject or subjects of our request appear in any capacity in any record prepared, received, transmitted, collected, and/or maintained by the FBI, *the entirety of that record is responsive to our request.*

### Instructions Regarding "Leads":

As required by the relevant case law, the FBI is required to follow any leads provided by the requestor and/or discovered by the FBI in the course of its searches for responsive records.

As required by the relevant case law, the FBI is required to perform additional searches when said leads indicate that records may be located in another FBI system. Failure to follow clear leads is a violation of FOIA.

### Instructions Regarding Drives and Storage Media:

We request searches of/for any and all records constituting, mentioning, or

17

referring to the subject(s) of our request stored: locally on individual computers (all drives); on remote-access drives assigned to individual users; on shared drives; on removable media and storage drives; and/or on mobile computing equipment, such as temporarily assigned laptops and smart devices.

### Instructions Regarding Federated Searches:

If the FBI performs any federated searches (i.e., a search across multiple databases), ensure that the user performing the searches has access to all content of all the databases searched.

### Instructions Regarding Release of Records as Color Records Rather than Black and White Records:

We request disclosure of all records in color. The release of color records as black and white records functionally erases important color-based information on those records. For example, FBI investigative records often contain meaningful color-coded information. By releasing such records in black and white, the existence of this important information is rendered invisible. For another example, hyperlinks on Intranet and Internet site records are frequently apparent only by virtue of being a distinct color. By releasing such records in black and white, the existence of these hyperlinks is also often rendered invisible.

### Instructions Regarding Photographs & other Image-based Materials:

We request that any photographs and/or other image-based records responsive to our request be released to me in their original or comparable forms, quality, and resolution. For example, if a photograph was taken digitally, or if the FBI maintains a photograph digitally, We request disclosure of the original digital image file, not a reduced resolution version of that image file nor a printout and scan of that image file. Likewise, if a photograph was originally taken as a color photograph, We request disclosure of that photograph as a color image, not a black and white image. This section of our request applies not only to requested records consisting entirely of photographs and/or other visual materials, but also to requested records that are partially comprised of photographs and/or other visual materials. Please contact me for any clarification on this point.

### Instructions Regarding Previously Processed Records and the Inadequacy of Previously Processed Records to Satisfy this Request:

The instant FOIPA request is a request for records responsive to *new* complete and thorough searches for, and processing of, any and all records constituting, mentioning, or referring to the subject(s) of our request. Definitionally, FBI searches for/releases of previously processed records will not and cannot satisfy this request.

**Instructions and Request Regarding Missing Records:**

Place any "missing" records that are responsive or potentially responsive to our request on "special locate" and advise me in writing that you have done so.

If any record(s) responsive or potentially responsive to our request cannot be located, we request disclosure of any and all records constituting, mentioning, or referring to the missing record(s). This includes but is not limited to: 1) any and all records indicating the existence (including the former existence) of the missing record(s); 2) any and all records indicating the potential responsiveness of the missing record(s) to our request(s); 3) any and all processing notes, search slips, and/or other records generated in the course of perfecting, locating, responding to, or otherwise processing the request(s) to which the missing record(s) are or may be responsive; 4) any and all other records constituting, mentioning, or referring to the missing record(s).

**Instructions Regarding Transmission & Format:**

We request the FBI provide any releases stemming from this request via email (ryannoah@mit.edu) or other electronic transmission on a rolling basis.

The FBI may electronically transmit the requested records to Shapiro as files that have been compressed using WinZip software or any other file compression software.[13]

If the FBI is unwilling to provide me the requested records via email or other electronic transmission, we request any releases stemming from the this request be provided to me in digital format (soft-copy) on a compact disk or other like media.

**Instructions Regarding Exemptions and Segregability:**

We call your attention to President Obama's 21 January 2009 Memorandum concerning the Freedom of Information Act, in which he states:

---

[13] Manufactured by WinZip Computing (a subsidiary of Corel Corporation), WinZip software is a leading file compression software. Files compressed using WinZip software use the .Zip file format. Files compressed using WinZip software are often referred to as "Zipped" files or "Zip" files.

19

All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA [....] The presumption of disclosure should be applied to all decisions involving FOIA.[14]

In the same Memorandum, President Obama added that government information should not be kept confidential "merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."

Finally, President Obama ordered that "The Freedom of Information Act should be administered with a clear presumption: In the case of doubt, openness prevails."

Nonetheless, if any responsive record or portion thereof is claimed to be exempt from production, FOIA/PA statutes provide that even if some of the requested material is properly exempt from mandatory disclosure, all segregable portions must be released. If documents are denied in part or in whole, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Please provide a complete itemized inventory and a detailed factual justification of total or partial denial of documents. Specify the number of pages in each document and the total number of pages pertaining to this request. For "classified" material denied, please include the following information: the classification (confidential, secret or top secret); identity of the classifier; date or event for automatic declassification or classification review or downgrading; if applicable, identity of official authorizing extension of automatic declassification or review past six years; and, if applicable, the reason for extended classification beyond six years.

We expect, as mandated by FOIA, that the remaining non-exempt portions of redacted documents will be released.

Please release all pages regardless of the extent of excising, even if all that remains are the stationery headings or administrative markings.

In addition, we ask that your agency exercise its discretion to release records which may be technically exempt, but where withholding serves no important public interest.

**Additional Instructions:**

Please produce all records with administrative markings and pagination included.

---

[14] President Barack Obama, "Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act," January 21, 2009; <http://www.whitehouse.gov/the_press_office/FreedomofInformationAct/.>

20

Please send a memo (copy to us) to the appropriate units to assure that no records related to this request are destroyed.

Unless we explicitly authorize otherwise in writing, we do not and will not authorize the administrative closure of our request. Should you need to contact us at any time for clarification or resolution of issues pertaining to this topic, please do not hesitate to do so. Shapiro can be reached by email at ryannoah@mit.edu and by phone at 301-602-3063. If leaving a message, please leave that message by email rather than phone voice mail.

## FEE CATEGORY AND REQUEST FOR A FEE WAIVER

### 1. REQUEST FOR INCLUSION IN NEWS MEDIA FEE CATEGORY

#### REQUESTORS ARE  REPRESENTATIVES OF THE NEWS MEDIA AND REQUEST CLASSIFICATION AS REPRESENTATIVES OF THE NEWS MEDIA FOR FOIPA FEE CATEGORY PURPOSES

The OPEN Government Act of 2007 established, and the United States Court of Appeals for the District of Columbia reaffirmed and explicated upon in *Cause of Action vs. FTC* (13-5335) (25 Aug. 2015), for FOIA purposes,

> 'a representative of the news media' means any person or entity that  gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. 552(a)(4)(A)(ii)

Requestor Leopold is a Senior Investigative Journalist for *Vice News*.[15]

Requestor Shapiro is an ABD doctoral candidate at the Massachusetts Institute of Technology. I am in the PhD program in History, Anthropology, and Science, Technology, & Society (HASTS) in MIT's Department of Science, Technology, & Society (STS).[16]

Shapiro is also a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University.[17]

Shapiro is an historian of national security, the policing of dissent, and governmental transparency.

---

[15] https://news.vice.com/contributor/jason-leopold

[16] http://web.mit.edu/hasts/graduate/shapiro.html

[17] Shapiro has been accepted as a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University for 2016-2017.
https://cyber.law.harvard.edu/newsroom/2016_2017_community

Among other things, Shapiro's work has exposed improper collusion between a major agricultural lobby and a U.S. government agency entity[18]; sparked a federal investigation of this improper collusion, resulting in the disgraced resignation of the president of the agency entity[19]; and sparked the introduction of bipartisan legislation to curb future similar abuses by government and industry.[20] Shapiro's work has also exposed the FBI's unprecedented utilization of classified remote-installation malware to circumvent animal rights activists encryption in 2003, as well as the DOJ's subsequent failure to inform Congress of such utilization as mandated by Congress.[21] Shapiro's work has also exposed the FBI's policy of instructing FBI agents to withhold surveillance technical details from prosecutors and defendants alike.[22] Shapiro's work has also exposed FBI consideration of federal terrorism charges against animal protectionists who expose horrific conditions on factory farms.[23] Shapiro's work has also exposed FBI targeting of Nelson Mandela and the anti-Apartheid movement as a Communist plot imperiling U.S. national security. This included but was not limited to FBI placement of a confidential informant within Nelson Mandela's inner circle in order to provide political information to the FBI on Mandela and his anti-apartheid associates while the FBI was tasked with protecting Mandela upon Mandela's post-prison tour of the United States in 1990.[24]

Shapiro's research and analysis on issues at the intersections of national security, the policing of dissent, and transparency are regularly featured in national and international media outlets. Media outlets that have covered Shapiro's work include but are not limited to:

*The New York Times, The Washington Post, The Los Angeles Times, The Wall Street Journal, USA Today, CNN, U.S. News & World Report, The Associated Press, Agence France-Presse, Politico, Business Insider, The International Business Times, The Atlantic, The Guardian, ABC News, CBS News, NPR, PBS, BBC World Service, The Nation, Mother Jones, Democracy Now!, The Hill, McClatchy DC, New Republic, National Journal, Columbia Journalism Review, Legal Times, PolicyMic, Government*

---

[18] http://bigstory.ap.org/article/a0a7a3fb1f6449f992f2410c577d919b/apnewsbreak-egg-group-scrambled-over-eggless-mayo-maker; http://www.theguardian.com/us-news/2015/sep/02/usda-american-egg-board-hampton-creek-just-mayo

[19] http://bigstory.ap.org/article/c7813b5fe68745d2a40c1d078c1542f5/egg-industry-group-ceo-steps-down-after-vegan-mayo-scramble

[20] https://www.theguardian.com/business/2016/jul/14/usda-reform-bill-agriculture-beef-eggs

[21] http://www.nytimes.com/2016/04/14/technology/fbi-tried-to-defeat-encryption-10-years-ago-files-show.html?smid=tw-nytimes&smtyp=cur&_r=0

[22] http://www.usatoday.com/story/news/2016/04/20/fbi-memos-surveillance-secrecy/83280968/

[23] https://ccrjustice.org/files/11.12.29_Greenscare_VideotapersTerrorists_LATimes.pdf

[24] http://america.aljazeera.com/articles/2014/5/28/fbi-spied-mandeladocuments.html; http://www.usnews.com/news/articles/2014/07/10/the-fbi-spied-on-nelson-mandela-in-1990-as-communist-threat.

22

*Executive, Inc., Wired, Fortune, Fox News, Fox Nation, The American Conservative, The Daily Caller, Breitbart News, Reason, New York Daily News, The Chicago Tribune, The Boston Globe, MSN News, Salon, Slate, The Daily Beast, Quartz, Vice News, Huffington Post, HuffPost Live, Yahoo News, Christian Science Monitor, Boston Business Journal, AOL News, The San Francisco Chronicle, The Houston Chronicle, The Minneapolis Star Tribune, The Independent, The Mirror, The Daily Mail, Black Entertainment Television (BET), The Boston Metro, The San Francisco Business Times, The Silicon Valley Business Journal, The Afro-American, Raw Story, The Chicago Defender, The NorthStar News & Analysis, The Atlanta Black Star, The Hollywood Reporter, NYC Today, The Mail & Guardian, Courthouse News, Japan Times, EatDrinkPolitics, Univsion, HispanTV, Al Jazeera America, Grist, Ecorazzi, Green Is the New Red, PC World, PC Mag, Computer World, SearchSecurity, IntelNews, Komando.com, VegNews, Truth-Out, FireDogLake, ShadowProof, Alternet, The Verge, Consumerist, Boing Boing, Techdirt, Tickle The Wire, The Public Record,* and *the Freedom of the Press Foundation.*

Shapiro has presented invited scholarly and popular lectures on topics at the intersections of national security, the policing of dissent, and transparency at numerous leading institutions and venues. These include but are not limited to:

The Massachusetts Institute of Technology, the National Institutes of Health (NIH), the Kennedy School of Government at Harvard University, Harvard Law School, Yale Law School, the New York City Bar Association, the Max Planck Institute for the History of Science (Berlin, Germany), Université catholique de l'Ouest (Angers, France), the University of California, Santa Barbara, The College of William & Mary, Boston University, American University (Washington, DC), The Cooper Union for the Advancement of Science and Art (New York City), the National Press Club (Washington, DC), the conference of the National Lawyers Guild, the History of Science Society, the American Anthropological Association, the Society for the Social History of Medicine, the Conference on Policy History, the American Society for Environmental History, DEFCON, Boston University, University College Cork (Cork, Ireland), Suffolk University Law School, the City University of New York Law School, The Base community center in Brooklyn, NY, and Burning Books bookstore (Buffalo, NY).

Shapiro's research and analysis have also been featured in television and film documentaries. For example, in February 2016, a documentary centrally featuring Shapiro's FOIA research and analysis aired on the cable channel Pivot. The documentary is titled "Activists or Terrorists" and was directed by award-winning filmmaker Brian Knappenberger and narrated by Academy Award nominated actress Maggie Gyllenhaal. This documentary constitutes episode five of Knappenberger's acclaimed documentary series "Truth and Power." *The New York Times* included the documentary episode "Activists or Terrorists" in its influential "What to Watch" list.[25] "Activists or Terrorists" is now available for viewing on iTunes and Amazon.com.

---

[25] http://www.nytimes.com/2016/02/19/arts/television/what-to-watch-friday.html

Shapiro's research and analysis have also been featured in popular and scholarly exhibits:

1. In 2006, Shapiro co-curated an historical exhibit at NIH on an issue pertaining to the relationships between the political functioning of national security, governmental transparency and secrecy, and dueling American social movements. This exhibit was titled "Animals As cold Warriors: Missiles, Medicine, and Man's Best Friend." The exhibit was held at the History of Medicine Division of the National Library of Medicine at NIH. Shapiro co-curated this exhibit with, and at the invitation of, the Deputy Chief of the History of Medicine Division of the National Library of Medicine. A digital overview version of the exhibit is available online.[26]

Additionally, elements of Shapiro's exhibit at NIH were subsequently incorporated into a 2008-2009 exhibit at the Lyndon Baines Johnson Presidential Library in Austin Texas. This exhibit at the Johnson Presidential Library was titled "To the Moon: The American Space Program in the 1960s".[27]

2. In 2014, some of Shapiro's FOIA work pertaining to the surveillance and policing of political dissent by the FBI and other agencies; FBI and other agency operations pertaining to secrecy; the political functioning of national security; and FBI and other agency FOIPA operations was rendered and displayed as part of an award-winning installation art exhibit in New York City. This exhibit is called "Monument to Cold War Victory: Clandestine Reading Room." The exhibit was held at the Lubalin Gallery at the Cooper Union for the Advancement of Science and Art. The exhibit will now be touring to additional galleries throughout the United States.

For this exhibit, Shapiro also served as a content contributor and expert consultant regarding the surveillance and policing of political dissent by the FBI and other agencies; FBI and other agency operations pertaining to secrecy; the political functioning of national security; and FBI and other agency FOIPA operations.

Additionally, in November 2014, on the closing evening of the New York City exhibition of "Monument to Cold War Victory: Clandestine Reading Room," the exhibit hosted a panel discussion titled "Dissent Under Surveillance." On this panel discussion, Shapiro presented a lecture on the relationships between the surveillance and policing of political dissent by the FBI and other agencies; FBI and other agency operations pertaining to secrecy; the political functioning of national security; and FBI and other agency FOIPA operations. This panel discussion, including Shapiro's lecture, was free, open to the public, and well attended.

Shapiro is a representative of several news outlets.

Shapiro is a researcher, analyst, and reporter for GreenIsTheNewRed.com (GNR). GNR is a popular online news outlet directed by GNR founder, Will Potter. Potter is

---

[26] See http://www.nlm.nih.gov/exhibition/animals/
[27] http://www.lbjlibrary.org/press/to-the-moon

24

the Marsh Professor of Journalism at the Michigan University[28], an award-winning journalist[29], author[30], TED Senior Fellow[31], and Knight-Wallace Journalism Fellow[32] specializing in coverage of the policing of dissent, dissident politics and culture, national security, freedom of information, and civil liberties.

Shapiro is a representative of Verso Books. Based in New York City and London, Verso Books[33] is the largest independent radical publishing house in the English-speaking world. *Harper's* has called Verso Book's "Anglo-America's preeminent radical press." Verso Books' authors have been awarded the Nobel Prize, the Pulitzer Prize, the Man Booker Prize, the Bancroft Prize, and many other prestigious international awards for scholarship, literature, and journalism. *The Sunday Times* has described Verso Books as "a rigorously intelligent publisher", and *The Nation* magazine has written that, "the scale of the achievement of Verso is clear." Verso Books has committed to publishing multiple books of Shapiro's pertaining to the operations and activities of the FBI, DOJ, and other U.S. agencies.

Shapiro is a representative of Sparrow Media.[34] Sparrow Media is a boutique news outlet and news publicity agency specializing in coverage of grassroots initiatives for social change that are often overlooked by mainstream media. Based out of New York City, Sparrow Media regularly produces exclusive news content on such grassroots initiatives, and disseminates this content to thousands of journalists and media outlets, activists and activist organizations, and the broader public. Shapiro is Sparrow Media's lead researcher, analyst, and writer for news stories regarding Freedom of Information and Privacy Act requests, agency FOIPA operations, and issues of governmental secrecy and transparency broadly.

---

[28] http://willpotter.com/marsh-professor-journalism/297/
[29] http://blog.ted.com/will-potter-on-of-treating-environmentalists-like-terrorists/
[30] https://www.kirkusreviews.com/book-reviews/will-potter/green-new-red/
[31] https://www.ted.com/speakers/will_potter
[32] http://blog.ted.com/will-potter-on-of-treating-environmentalists-like-terrorists/
[33] http://www.versobooks.com
[34] For examples, see:
http://www.sparrowmedia.net/2013/11/fbi-designates-mit-foia-ryan-shapiro-national-security/
http://www.sparrowmedia.net/2014/01/nelson-mandela-cia-foia-lawsuit/
http://www.sparrowmedia.net/2014/03/nsa-national-defense-espionage-act-mit-foia-nelson-mandela/
http://www.sparrowmedia.net/2014/05/fbi-releases-nelson-mandela-documents-response-mit-students-foia-lawsuit/
http://www.sparrowmedia.net/2014/06/jason-leopold-ryan-shapiro-sue-cia-for-senate-spying/
http://www.sparrowmedia.net/2014/07/nelson-mandela-fbi-spy-files/
http://www.sparrowmedia.net/2014/12/one-man-is-single-handedly-standing-in-the-way-of-the-foia-improvement-act/
http://www.sparrowmedia.net/2016/02/federal-judge-shuts-down-fbis-attempted-foia-power-grab-rules-fbi-may-not-unilaterally-invent-new-exemptions-to-withhold-documents/

At Sparrow Media, Shapiro is also a researcher, analyst, and writer for news stories regarding a range of topics including but not limited to national security, civil liberties, social and racial justice, human rights, animal and environmental advocacy, privacy and surveillance, and the policing of dissent.

Shapiro is a reporter/contributor for *The Public Record*.[35] *The Public Record*[36] is a web-based cutting-edge public interest news outlet specializing in coverage of national security, civil liberties, human rights, free speech, the policing of dissent, governmental transparency and secrecy, and agency FOIPA operations. The mission of *The Public Record* is to produce and publish in-depth original reporting on a wide range of domestic and international issues.

Shapiro is a representative of Vice News. Shapiro is collaborating with Vice News Senior Investigative Reporter, Jason Leopold on numerous research and writing projects.

Shapiro has authored published popular and academic pieces based upon his research and analysis in outlets in additional to those enumerated above

For examples, see:

i) https://www.nlm.nih.gov/exhibition/animals/credits.html

ii) http://muse.jhu.edu/journals/vic/summary/v051/51.1.shapiro.html

iii) http://www.nlgmasslawyers.org/animal-enterprise-terrorism-act/

iv) http://truth-out.org/news/item/21626-is-freeing-a-duck-terrorism

v)https://lanternbooks.presswarehouse.com/books/BookDetail.aspx?productID=3 95352

As illustrated above, in addition to the specific news media outlets of which Shapiro is a representative, Shapiro's professional activities on the whole are especially organized around the production and dissemination of original knowledge to multiple, diverse, and extensive segments of the public.

---

[35] http://pubrecord.org/about/
[36] http://pubrecord.org

26

## 2. REQUEST TO BE CLASSIFIED AS AN EDUCATIONAL REQUESTOR

Shapiro is an ABD doctoral candidate at the Massachusetts Institute of Technology. Shapiro is in the PhD program in History, Anthropology, and Science, Technology, & Society (HASTS) in MIT's Department of Science, Technology, & Society (STS).[37]

Shapiro is also a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University.[38]

Shapiro is an historian of national security, the policing of dissent, and governmental transparency.  The disclosures sought in the instant request are sought pursuant of this end.

## 3. REQUEST FOR A COMPLETE WAIVER OF FEES

We are willing to pay any reasonable expenses associated with this request, however, as the purpose of the requested disclosure is in full conformity with the statutory requirements for a waiver of fees, we formally request such a waiver. We request a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309,1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

The Department of Justice regulations provide a two-part test for determining whether a requestor is entitled to a waiver of fees.  Records responsive to a request are to be furnished without charge if the requestor has demonstrated that "(i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (ii) Disclosure of the information is not primarily in the commercial interest of the requestor." 28 CFR 16.11(k). The DOJ regulations further require the consideration of the following factors in determining whether the requestor has met the first part of the test: the subject of the request; the informative value of the information to be disclosed; the contribution to an understanding of the subject by the public likely to result from disclosure; and the significance of the contribution to public understanding. 28 CFR 16.11(k)(2). To

---

[37] http://web.mit.edu/hasts/graduate/shapiro.html
[38] I have been accepted as a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University for 2016-2017.
https://cyber.law.harvard.edu/newsroom/2016_2017_community

27

determine whether the second part of the test is met, the DOJ regulations require consideration of the following factors: the existence and magnitude of a commercial interest; and the primary interest in disclosure. As explained below, my request clearly meets this two-part test, and is also the type of request, and I am the type of requestor, for which courts have held that waiver of fees is required under FOIA.

DISCLOSURE OF THE REQUESTED RECORDS IS IN THE PUBLIC INTEREST BECAUSE IT IS LIKELY TO CONTRIBUTE SIGNIFICANTLY TO THE PUBLIC UNDERSTANDING OF THE OPERATIONS AND ACTIVITIES OF THE GOVERNMENT.

A. The subject of the requested records concerns the operations and activities of the FBI and broader government. The subject of the requested records concerns identifiable operations and activities of the FBI and broader government, specifically, the response of the FBI to the referenced comments.

B. The disclosure is likely to contribute to an understanding of government operations and activities because the disclosable portions of the requested records will be meaningfully informative about those operations and activities. The vast majority of disclosable information is not already in the public domain, in either a duplicative or a substantially identical form, and therefore the disclosure would add substantial new information to the public's understanding of how the FBI responds to comments such as those referenced in "Records Sought" above.

C. The disclosure of the requested records will contribute to the increased understanding of a broad audience of persons interested in the subject, rather than merely our own individual understanding.

As explained herein in more detail, the audience likely to be interested in the subject is broad, and includes, historians of modern American government, politics, culture, and national security; journalists reporting on American politics, government, national security, and society; civil liberties attorneys; and the general public.

We firmly intend to analyze the requested records in order to facilitate significant expansion of public understanding of government operations. As demonstrated in sections, "1. Request for Inclusion in News Media Fee Category" and "2. Request To Be Classified as an Educational Requestor" above, we are well qualified to perform this analysis and dissemination.

*As should be clear from the above, we have the ability and firm intention to disseminate to the public significant expansions of understanding of government operations based on our analysis of the requested disclosures.*

Additional Note on Journalistic Research and the Public Interest:

The case law on this matter is emphatically clear that journalistic inquiry alone satisfies the FOIPA public interest requirement. *National Treasury Employees Union v. Griffin*, 811 F.2d, 644, 649 (D.C. Cir. 1987).

Further, as articulated in the amendments to FOIA established by the OPEN Government Act of 2007, we solidly meet the applicable definition of "a representative of the news media[.]" The OPEN Government Act of 2007 established that for FOIA purposes,

> 'a representative of the news media' means any person or entity that gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. 552(a)(4)(A)(ii)

Based on our firmly intended research, analysis, and information dissemination activities, we clearly satisfy this description.

Therefore, in that we are "person[s] or entit[ies] that gather[] information of potential interest to the public, use[] its editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience," we solidly meet the applicable definition of "a representative of the news media." As such, we have again more than satisfied the requirement for a fee waiver.

The disclosure of the requested records is likely to contribute "significantly" to public understanding of government operations and activities because disclosure would enhance to a significant extent the public's understanding of the subject in question as compared to the level of public understanding existing prior to the disclosure

### DISCLOSURE OF THE INFORMATION IS NOT PRIMARILY IN OUR COMMERCIAL INTEREST.

Any commercial interest that we have which would be furthered by the requested disclosure is *de minimis.*

We are requesting the release of records to analyze for use in the dissemination of news articles. Though journalists do get paid for writing news articles, payment is not the primary purpose for which such work is conducted. As the D.C. Circuit explained in *National Treasury Employees Union v. Griffin*, 811 F.2d, 644, 649 (D.C. Cir. 1987), "While private interests clearly drive journalists (and journals) in their search for news, they advance those interests almost exclusively by dissemination of news, so that the public benefit from news distribution necessarily rises with any private benefit. Thus it is reasonable to presume that furnishing journalists with information will primarily benefit the general public[.]"

29

The disclosure of records will significantly benefit the public interest, and this benefit to the public is of vastly greater magnitude than our minimal commercial interest.

Additionally, the courts and the legislature have been deeply invested in ensuring that FOIPA duplication and search fees are not used by government agencies to deliberately or otherwise thwart legitimate scholarly and journalistic research:

This was made clear in *Better Government Ass'n v. Department of State,* in which the court ruled that, "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Government Ass'n v. Department of State*, 780 F.2d 86, 89 (D.C. Cir. 1986).

This point is further elaborated in *Ettlinger v. FBI,*

> The legislative history of the FOIA clearly indicates that Congress intended that the public interest standard for fee waivers embodied in 5 U.S.C. § 552(a)(4)(A) be liberally construed. In 1974, Congress added the fee waiver provision as an amendment to the FOIA in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests. The 1974 Senate Report and the sources relied on in it make it clear that the public interest/benefit test was consistently associated with requests from journalists, scholars and non-profit public interest groups. There was a clear message from Congress that "this public-interest standard should be liberally construed by the agencies." The 1974 Conference Report, in which differences between the House and Senate amendments were ironed out, retained the Senate-originated public-interest fee waiver standard and further stated "the conferees intend that fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." Further evidence of congressional intent regarding the granting of fee waivers comes from a 1980 Senate Subcommittee report. The report stated that "excessive fee charges . . . and refusal to waive fees in the public interest remain . . . 'toll gates' on the public access road to information." The report noted that "most agencies have also been too restrictive with regard to granting fee waivers for the indigent, news media, scholars . . ." and recommended that the Department of Justice develop guidelines to deal with these fee waiver problems. The report concluded: The guidelines should recommend that each agency authorize as part of its FOIA regulations fee waivers for the indigent, the news media, researchers, scholars, and non-profit public interest groups. The guidelines should note that the presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public.

The court, in its *Ettlinger v. FBI* decision, continued that on 18 December 1980, a

> policy statement was sent to the heads of all federal departments and agencies accompanied by a cover memorandum from then United States Attorney General Civiletti which stated that he had "concluded that the Federal Government often fails to grant fee waivers under the Freedom of Information Act when requesters have demonstrated that sufficient public interest exists to support such waivers." The Attorney General went on to state: Examples of requesters who should ordinarily receive consideration of partial fee waivers, at minimum, would be representatives of the news media or public interest organizations, and historical researchers. *Such waivers should extend to both search and copying fees, and in appropriate cases, complete rather than partial waivers should be granted.*

## 4. CONCLUSION

As demonstrated above, the disclosure of the requested records will significantly contribute to expanded public understanding of government operations. Requestors are representatives of the news media. Requestor Shapiro is also an educational requestor. Requesters have the intent and ability to disseminate this significant expansion of public understanding of government operations. The public interest in this significant expansion of public understanding of government operations far outweighs any commercial interest of our own in the requested release. Accordingly, our fee waiver request amply satisfies the rules of 6 C.F.R. 5.11(k). Legislative history and judicial authority emphatically support this determination. For these reasons, and based upon their extensive elaboration above, requesters request a full waiver of fees be granted, and that requestors be classified as representatives of the news media for FOIPA fee category purposes, and that requestor Shapiro additionally be classified as an educational requestor for FOIPA fee category purposes. Requesters will appeal any denial of our request for a waiver of fees and fee category classifications, and will take the issue to the courts if necessary.

\*\*\*

Please do not hesitate to contact us if you have any questions concerning this request.

Thank you. We appreciate your time and attention to this matter.

31

Ryan Noah Shapiro and Jason Leopold

We seek expedited treatment for the attached request.

1. *The requested information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity.*

The requested information involves an actual or alleged Federal government activity and there exists an urgent need to inform the public about this activity. There is an urgent need for the information requested because of the upcoming election.

2. *We are persons primarily engaged in disseminating information.*

Requestor Jason Leopold is a Senior Investigative Reporter at VICE News.

Requestor Ryan Noah Shapiro is a PhD candidate in the Department of Science, Technology, & Society at the Massachusetts Institute of Technology, as well as a research affiliate at the Berkman Klein Center for Internet & Society at Harvard University, as well as a representative of several news media outlets.

3. *Certification*

I certify the foregoing to be true and correct to the best of my knowledge and belief.

_____        8-17-2016
Jason Leopold                    Date

_____        17 Aug. 2016
Ryan Noah Shapiro                Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, RYAN SHAPIRO ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1: 16-cv-01827-KBJ |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| TREASURY, et al ) | |
| ) | |
| Defendants ) | |

# **Exhibit B**

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 19, 2016

MR. JEFFREY L. LIGHT
SUITE 915
1712 EYE STREET NW
WASHINGTON, DC 20006

FOIPA Request No.: 1358393-000
Civil Litigation No.: 1:16-cv-01827
Subject: Donald J. Trump Statement
regarding Second Amendment People
(August 9, 2016)

Dear Mr. Light:

This is in response to your Freedom of Information (FOIA) request.

The FBI can neither confirm nor deny the existence of records responsive to your request pursuant to FOIA Exemptions (b)(7)(A) and (b)(7)(E) [5 U.S.C.§ 552 (b)(7)(A) and (b)(7)(E)].

The nature of your request implicates investigative records the FBI may or may not compile pursuant to its broad criminal and national security investigative missions and functions. Accordingly, the FBI cannot confirm or deny the existence of any such records about your subject as the mere acknowledgment of such records existence or nonexistence would in and of itself trigger foreseeable harm to agency interests protected by Exemptions (b)(7)(A) and Exemption (b)(7)(E) to wit: indicating whether the FBI does or does not maintain material the disclosure of which could reasonably interfere with enforcement proceedings, and/or disclose techniques and procedures, or guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk circumvention of law.

It is unnecessary to adjudicate your request for a fee waiver, as no fees are being assessed.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov. to seek dispute resolution directly from the FBI. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services," and also cite the FOIPA Request Number assigned to your request, so we can easily identify your request for resolution.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD, RYAN SHAPIRO     )
     )
    Plaintiffs,     )
     )
     v.     )     Civil Action No. 1: 16-cv-01827-KBJ
     )
UNITED STATES DEPARTMENT OF     )
TREASURY, et al     )
     )
    Defendants     )
     )

# Exhibit C



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 19, 2016

MR. JEFFREY L. LIGHT
SUITE 915
1712 EYE STREET NW
WASHINGTON, DC 20006

FOIPA Request No.: 1358395-000
Civil Litigation No.: 1:16-cv-01827
Subject: Donald J. Trump Statement
regarding Russia (July 27, 2016)

Dear Mr. Light:

This is in response to your Freedom of Information (FOIA) request.

The FBI can neither confirm nor deny the existence of records responsive to your request pursuant to FOIA Exemptions (b)(7)(A) and (b)(7)(E) [5 U.S.C.§ 552 (b)(7)(A) and (b)(7)(E)].

The nature of your request implicates investigative records the FBI may or may not compile pursuant to its broad criminal and national security investigative missions and functions. Accordingly, the FBI cannot confirm or deny the existence of any such records about your subject as the mere acknowledgment of such records existence or nonexistence would in and of itself trigger foreseeable harm to agency interests protected by Exemptions (b)(7)(A) and Exemption (b)(7)(E) to wit: indicating whether the FBI does or does not maintain material the disclosure of which could reasonably interfere with enforcement proceedings, and/or disclose techniques, procedures, or guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk circumvention of law.

It is unnecessary to adjudicate your request for a fee waiver, as no fees are being assessed.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov. to seek dispute resolution directly from the FBI. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services," and also cite the FOIPA Request Number assigned to your request, so we can easily identify your request for resolution.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ